# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BROWN v. THE AUSTIN-WESTERN COMPANY, LIMITED.

### March 10, 1910.

### Rehearing denied June 9, 1910.

### Absent, Buchanan, J.

1.  SALES—*Sale on Trial.*—The sale of a rock crusher represented to have a given capacity, with liberty to test and return within thirty days if the crusher does not develop the represented capacity is not an absolute sale, but a "sale on trial."

2.  SALES—*When a "Sale on Trial" Becomes Absolute.*—Where there is a "sale on trial," there is no completed sale until the approval is given, either expressly, or by implication resulting from keeping the goods beyond the time allowed for trial, which is a reasonable time if none is fixed; and the failure to return the goods within the time specified for trial, or within a reasonable time, makes the sale absolute.

3.  SALES—*"Sales on Trial"—Warranties—Case At Bar—Refusal to Return Goods—Waiver of Warranty—Damages.*—In a "sale on trial" the title to the property sold must pass before the warranty clause can become effective. . Under the contract in the case at bar, the title to the stone crushers (the property sold) never passed until the defendant had tried them, and refused to return them. Having refused to return them after he had tried them, he became liable for the contract price, and waived any warranty, express or implied, as to their capacity, and cannot recover for money expended in preparing foundations, and for removing and storing waste stone after he stopped using them.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Robert H. Talley*, for the plaintiff in error.

*H. St. John Coalter*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of assumpsit was brought by the Austin-Western Company, Limited, to recover of J. Henry Brown $2,249, the purchase price of two rock crushers. The defendant filed a plea of *non assumpsit*, and a special plea of set-offs, amounting to $5,121.60. There was a verdict and judgment in favor of the plaintiff for $2,249 and costs, subject to a credit of $221.60, which we are asked to review and reverse.

It appears that the defendant, J. Henry Brown, owned and operated certain granite quarries in Henrico county, and that the plaintiff manufactured machinery in Chicago. On the 5th day of July, 1906, the defendant placed in the hands of the plaintiff an order for two stone crushers and all necessary driving connections, to be shipped to Richmond Va. This order was in form a written contract signed by the defendant, which set forth in detail the terms of purchase agreed upon between the parties. It is provided that crusher No. 2 should have the capacity of turning out from 18 to 30 tons per hour, and that No. 3 should turn out from 30 to 40 tons per hour; that upon the arrival of the crushers the defendant would pay the freight charges, and at his own expense furnish power, cartage, assistance, etc., to give the crushers a fair and thorough trial. It provided further, that if the crushers should equal the stipulated capacity the defendant would pay for them according to the terms of the contract, but that if they did not he would notify the plaintiff in writing at Chicago of such failure, and that if, within thirty days from the receipt of such notice, the plaintiff failed to make the crushers do the prescribed work, that then the plaintiff

would refund the freight charges and receive back the crushers at the Ricmond railroad station from which they had been taken, and would cancel the contract. The crushers are warranted to be thoroughly made of good material and workmanship, capable of doing the work for which they were intended. without breakage. the plaintiff agreeing to replace, free of charge, any parts which may break within twelve months from the date of the contract, through fault of material or construction. Finally, it is agreed that the contract embodies the entire understanding; that it is not subject to countermand, and is not to be affected by any verbal agreement.

In pursuance of this contract the plaintiff delivered at the Richmond railroad station two stone crushers, Nos. 2 and 3, which were received by the defendant and removed by him to his granite quarries, having first paid the freight charges as stipulated. The contract provided that the defendant should, at his own expense, furnish the power, cartage, assistance, etc., necessary to give the crushers a fair and thorough trial, and the evidence abundantly shows that the contemplated test could have been made at a cost of from $25 to $35. The defendant, however, before making any test, proceeded to build heavy concrete foundations and other equipment for a permanent plant, at a total cost, as alleged, of $2,121.60. After this expensive plant was completed, the defendant placed the crushers in position for permanent use, and then, for the first time, subjected them to any test. The only reason given by him for pursuing this course was that the agent from whom he bought was a friend of his, in whom he had great confidence, and that he did not doubt that his representations with respect to the capacity of the machines was true. When the crushers were finally subjected to trial, the defendant found that they fell very far short of the capacity called for by the contract, and he notified the

plaintiff of that fact. There was considerable delay and correspondence about the matter; it being suggested by the plaintiff that the diminished capacity was the result of lack of power in operating the machines. Finally, the plaintiff wrote to the defendant, calling his attention to the clause in the contract giving him the right to return the machines to the Richmond railroad station and to be reimbursed the freight charges paid by him, and insisting that he should without further delay decide whether he would keep the machines or return them and be reimbursed the freight charges which were tendered. The defendant refused to return the crushers, which he had been in the meantime using, unless the plaintiff would agree to pay him the damages he claimed to have suffered as a result of the transaction. These are stated in the special plea of set-offs to be $2,121.60, the cost of the permanent structure and its equipment, and $3,000 cost of removing and storing waste stone from the quarry after he was ordered to stop using the crushers.

Throughout this case the contention on behalf of the defendant has assumed that the contract under consideration evidenced an absolute sale; that the title passed at once upon the delivery of the crushers, with a warranty that they would do a certain amount of work. This position is not tenable. The contract evidences what is termed a "sale on trial." Where there is a sale on trial, there is no sale until the approval is given, either expressly or by implication resulting from keeping the goods beyond the time allowed for trial, which is a reasonable time if not expressly fixed; and the failure to return the goods within the time specified for trial, or within a reasonable time, makes the sale absolute. Benjamin on Sales (2nd Am. Ed.), sec. 595; Schouler's Personal Property, vol. 2, pp. 309-10; *Machine Co.* v. *Smith,* 50 Mich. 565, 15 N. W. 906, 45 Am. Rep. 57.

In the case at bar, the contract, which was filled up in

large part by the defendant, furnishes no warrant for the position taken that he could demand payment of the damages claimed in his plea of set-offs as a condition precedent to his returning the machines. The extent of the defendant's right under his contract was to subject the machines to trial, at his own cost, and if they did not equal a certain capacity to return them to the railroad station at Richmond, and have the freight charges paid by him refunded. This the defendant refused to do, and, therefore, the sale became absolute and he became liable to pay the plaintiff the purchase price.

It is by no means clear that the warranty clause in the contract was intended to cover the capacity of the crushers, but if it was so intended the title would have to pass before such a warranty could become effective. *Bundy* v. *Machine Company*, 143 Mich. 10, 106 N. W. 397, 5 L. R. A. (N. S.) 475. Under the contract before us the title to the stone crushers never passed until the defendant had tried them and refused to return them. If he kept them, after trying them, he thereby waived any warranty, express or implied.

The instructions given by the court were in conformity with the view herein taken of the contract and properly submitted the case to the jury. The instructions asked for by the defendant were wholly in conflict with the principles herein announced, and were properly refused.

There is no error in the judgment complained of, and it is affirmed.

*Affirmed.*