BEST MANUFACTURING CO., APPELLANT, *v.* HUTTON,
RESPONDENT.

(No. 3,358.)

(Submitted March 19, 1914.   Decided April 8, 1914.)

[141 Pac. 653.]

*Contracts—Sales—Acceptance—Waiver of Defects—Warranties
—Breach—Pleading—Counterclaim—Principal and Agent—
Appeal—Notice of Intention—Presumptions—Bills of Excep-
tions—Settlement—Delivery to Judge—Sufficiency.*

Appeal—Notice of Intention—Presumptions.
1.  Unless the contrary appears affirmatively from the record on
appeal, the presumption obtains that the notice of intention to move
for a new trial was filed in time.

Same—Notice of Intention—When in Time.
2.  Where the record on appeal did not affirmatively show that coun-
sel for appellant was present when judgment was entered, or that it
was entered before an extension of time in which to file his bill of
exceptions on motion for new trial and stay of execution were asked
for and granted (May 2), and the clerk of the district court on May
6, attempted to advise him (see paragraph 4, *infra*) that the entry
had been made two days before, and on May 15 counsel for respond-
ent served formal notice upon him to that effect, appellant's notice
of intention to move for new trial, served on May 21, *held* to have
been in time (Rev. Codes, sec. 6796).

Same—Notice of Intention—Waiver.
3.  If there was untimeliness in filing notice of intention under the
circumstances detailed in paragraph 2, *supra,* it was waived by the

conduct of opposing counsel in extending (on June 29) appellant's time to file his bill of exceptions, and entering into a stipulation whereby his time to propose amendments was enlarged.

Same—Entry of Judgment—Service of Notice—Insufficiency.

4. Service of notice of entry of judgment made through the mail on an attorney whose residence was known to the clerk, *held* insufficient under *State ex rel. Cohen* v. *District Court,* 38 Mont. 119, 99 Pac. 139.

Same—Bill of Exceptions—Settlement—Delivery to Judge.

5. Where a proposed bill of exceptions had been handed by the moving party to the clerk of the district court and by him delivered to the judge, with whom opposing counsel had lodged amendments within time so that the judge was in possession of both bill and amendments within ten days after the latter were proposed, the statute (Rev. Codes, sec. 6788) was satisfied, and the fact that appellant's counsel did not personally present them together to the clerk or the judge did not render the method pursued ineffectual.

Contracts of Sale—Acceptance—Waiver of Defects.

6. Where plaintiff agreed to furnish defendant a traction outfit of a certain character and capacity, and the latter contracted, *inter alia,* that continuous use of it for twenty days, or at intervals during that time, should constitute an acceptance waiving all claims for damages, *etc.,* and on receipt thereof the former not only used it himself at intervals during three years for two-thirds of which time he was aware that it did not and could not be made to meet warranties made by the seller, but hired it out and received money for its use and paid part of the purchase price, his acceptance of it was complete.

Same.

7. While an acceptance does not ordinarily waive a breach of warranty, an express stipulation that acceptance should constitute a waiver "of all claims for damages, either upon express or implied warranty," was conclusive, unless in turn waived by the seller.

Same—Acceptance—Waiver—Validity of Stipulation.

8. *Held,* that the provision in a contract of sale of certain machinery to the effect that twenty days' use should constitute an acceptance and waiver of deficiencies, is neither void as a stipulation for liquidated damages (Rev. Codes, sec. 5054) nor obnoxious as a restriction upon the right to have one's claims adjudicated in a court of law, (Rev. Codes, sec. 5056.)

Same—Warranties—Retention of Property—Effect.

9. Parties may, by the express terms of their contract, make the retention of property without complaint, conclusive evidence that a warranty contained therein has been fulfilled to the satisfaction of the purchaser.

Same—Breach of Warranty—Pleading—Counterclaims.

10. A breach of warranty not waived may be pleaded by way of counterclaim to an action on the purchase price, but cannot (with certain exceptions) be relied on as a defense, after acceptance and retention with knowledge of the breach.

Same—Acceptance—Estoppel—Principal and Agent.

11. Where defendant did not, before acceptance by use for twenty days as stipulated in the contract had become a fact, complain to plaintiff's agent that the engine purchased by him was defective but continued to use it even after the agent's alleged assurances that the defects would be remedied, remained unfulfilled, the contention that plaintiff was estopped to claim acceptance by use had no merit, in

view of the provision of the contract that no agent should have any power to vary its terms and conditions.

[As to buyer's risk, see note in 75 Am. St. Rep. 77.]

Appeal—Erroneous Judgment—Final Disposition of Cause by Supreme Court—When.

12. Where it is apparent from the record on appeal that on the showing made by him in the trial court defendant was erroneously awarded judgment and that he submitted to the court and jury all he had to offer in resistance to his adversary's demand, a new trial will be denied and the cause finally disposed of by an order directing entry of judgment for appellant.

*Appeal from District Court, Madison County; J. B. Poindexter, Judge.*

ACTION by the Best Manufacturing Company against H. F. Hutton. Plaintiff appeals from the judgment in favor of defendant and from an order denying its motion for a new trial. Reversed and remanded, with directions to enter judgment for plaintiff.

*Mr. George Y. Patten,* for Appellant, submitted a brief, and one in reply to that of respondent, and argued the cause orally.

The failure to give the stipulated notice to appellant at its home office by registered letter was an acceptance of the freighting outfit, and a waiver of all claims for damages under the warranty, and this condition could not be met or waived by any notice to appellant's agent, or any promises made by him. (*Berlin Mach. Works* v. *Midland Coal etc. L. Co.,* 45 Mont. 390, 123 Pac. 396; *Murphy* v. *Russell & Co.,* 8 Idaho, 133, 67 Pac. 421; *Fahey* v. *Esterley M. Co.,* 3 N. D. 220, 44 Am. St. Rep. 554, 55 N. W. 580; *Furneaux* v. *Esterly M. Co.,* 36 Kan. 539, 13 Pac. 824; *Palmer* v. *Banfield,* 86 Wis. 441, 56 N. W. 1090; *Potter* v. *Lee,* 94 Mich. 140, 53 N. W. 1047; *Burke* v. *Keystone Mfg. Co.,* 19 Ind. App. 556, 48 N. E. 382; *Brown* v. *Russell,* 105 Ind. 46, 4 N. E. 428; *J. I. Case Threshing Machine Co.* v. *Hall,* 32 Tex. Civ. App. 214, 73 S. W. 835; *Kingman* v. *Watson,* 97 Wis. 596, 73 N. W. 438; *Swann* v. *Lowe,* 4 Wills. Civ. Cas. Ct. App. (Tex.) 303, 18 S. W. 789.)

An unauthorized visit of an agent, without the knowledge of the seller, will not amount to a waiver of notice. (35 Cyc. 428;

*J. I. Case Threshing Machine Co.* v. *Ebbighausen,* 11 N. D. 466, 92 N. W. 826; *Trapp* v. *New Birdsall Co.,* 109 Wis. 543, 85 N. W. 478; *J. I. Case Threshing Machine Co.* v. *Gidley,* 28 S. D. 101, 132 N. W. 711; *Eichelroth* v. *Long,* 156 Ill. App. 108.)

Continued use of the freighting outfit by respondent for over three years, in doing work for himself and others, operated as an acceptance of the outfit, and a waiver of any claim under the warranty. (*Russell* v. *Murdock,* 79 Iowa, 101, 18 Am. St. Rep. 348, 44 N. W. 237; *Nichols-Shepard Co.* v. *Rhoadman,* 112 Mo. App. 299, 87 S. W. 62; *Yeiser* v. *Russell & Co.,* 26 Ky. Law Rep. 1151, 83 S. W. 574; *Woodward* v. *Emmons,* 61 N. J. L. 281, 39 Atl. 703; *Massillon Engine & Thresher Co.* v. *Schirmer* (Iowa), 93 N. W. 599; *Burke* v. *Keystone Mfg. Co.,* 19 Ind. App. 556, 48 N. E. 382; *Thomas Mfg. Co.* v. *Griffin,* 16 Tex. Civ. App. 188, 40 S. W. 755; *Wolf Co.* v. *Northwestern Dairy Co.,* 55 Wash. 665, 104 Pac. 1123; *Osborne* v. *Dwyer,* 13 Ill. App. (13 Bradw.) 377; *Kingman* v. *Watson,* 97 Wis. 596, 73 N. W. 438.)

The contract expressly provided that if the freighting outfit did not do what was claimed for it, respondent should return it to appellant, and the payments previously made would be refunded, and that appellant should under no circumstances incur any further or other liability to respondent for a breach of warranty, or otherwise, and, therefore, respondent could not under any circumstances retain the outfit, and set off damages for breach of the warranty in an action for the purchase price. (*Gaar, Scott & Co.* v. *Hodges,* 28 Ky. Law Rep. 889, 90 S. W. 580; *Massillon Engine & Thresher Co.* v. *Schirmer, supra; J. I. Case Threshing Machine Co.* v. *Hall,* 32 Tex. Civ. App. 214, 73 S. W. 835; *Scott* v. *Vulcan Iron Works Co.,* 31 Okl. 334, 122 Pac. 186; *J. I. Case Threshing Machine Co.* v. *Gidley,* 28 S. D. 101, 132 N. W. 711; *Swann* v. *Lowe,* 4 Wills. Civ. Cas. Ct. App. (Tex.) 303, 18 S. W. 789; *McCormick Harvesting Machine Co.* v. *Hartman,* 35 Neb. 629, 53 N. W. 566; *Burke* v. *Keystone Mfg. Co.,* 19 Ind. App. 556, 48 N. E. 382.)

*Messrs. Hartman & Hartman* and *Mr. Lyman H. Bennett,* for Respondent, submitted a brief; *Mr. Walter S. Hartman* argued the cause orally.

The provisions of the printed contract relied upon by appellant as foreclosing the right of respondent to assert, as a defense to the action upon notes given for the purchase money for the freighting outfit in question, any breach of the warranty of said outfit are unconscionable and cannot be enforced. They are in violation of sections 5054 and 5055, Revised Codes, and therefore void. (*Deuninck* v. *West Gallatin Irr. Co.,* 28 Mont. 255, 72 Pac. 618; *Greenleaf* v. *Stockton Com. Harvester etc. Works,* 78 Cal. 606, 21 Pac. 369.)

There was a waiver by appellant of the provisions in said printed contract, in that the failure of the freighting outfit sold to respondent to fulfill the terms of the special warranty was known to the agent who sold and delivered the outfit to respondent and who was on the ground for the purpose of ascertaining and testing whether or not the outfit complied with the warranty; that the agent attempted to remedy the defects in the outfit, and make it conform to the special warranty, and when it did not do so from time to time, promised respondent that the company would make it so conform to and fulfill the warranty; that respondent relied upon these assurances of the agent and was excused by the facts shown in the record from serving any formal notice under the provisions of the printed contract, and his continuance in possession of the outfit in apparent contravention of the terms of said printed contract was for the same reason excused, and that his acceptance of the outfit under the facts shown by the record did not constitute a waiver of his right to set up the breach of warranty in a suit for the purchase money as a defense or a counterclaim thereto. (*First Nat. Bank* v. *Dutcher,* 128 Iowa, 413, 1 L. R. A. (n. s.) 142, 104 N. W. 497; *Champion Machine Co.* v. *Mann,* 42 Kan. 372, 22 Pac. 417; *Nichols & Shepherd Co.* v. *Wiedemann,* 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; *Kingman* v. *Watson,* 97 Wis. 596, 73 N. W. 438; *Sandwich Mfg. Co.* v. *Feary,* 40 Neb.

226, 58 N. W. 713; *Canham* v. *Plano Mfg. Co.*, 3 N. D. 229, 55 N. W. 583; *Springfield Engine & Thresher Co.* v. *Kennedy*, 7 Ind. App. 502, 34 N. E. 856; *D. M. Osborne & Co.* v. *Walther*, 12 Okl. 20, 69 Pac. 953; *McCormick Harvesting Mach. Co.* v. *Gray*, 100 Ind. 285; *McCormick Harvesting Mach. Co.* v. *Machmuller*, 1 Neb. (Unof.) 80, 95 N. W. 507; *Elliott* v. *Puget Sound & Central A. S. S. Co.*, 22 Wash. 220, 60 Pac. 410.)

If the provisions of the printed order relied upon by appellant are unconscionable or in contravention of the provisions of the Revised Codes above cited, or did not apply to the special warranty, or if they have been waived by appellant, the rule governing the case at bar is that the buyer of the property of the kind in question has an election of remedies for the breach of the contract of warranty as follows: (a) If he knows of the defect at the time delivery is offered he may refuse to accept the property, insist on due performance, and if further performance is not duly offered, sue for damages for nonperformance, and if he has paid for the property in advance, may recover the amount of money paid thereon as part of the damages. (b) If the contract of sale has been partly performed, he may rescind the contract, restore what he has received and recover what he has paid. (c) He need not rescind or reject the property, however, but may stand upon the contract and relying upon the warranty may take the property offered and sue for the damages caused by the breach, and these damages may be set up in an original suit for damages if he has paid in full, or as a defense or counterclaim to the action, if he is sued for the purchase price. (*North Alaska Salmon Co.* v. *Hobbs, Wall & Co.*, 159 Cal. 380, 35 L. R. A. (n. s.) 501, 113 Pac. 870, 120 Pac. 27; *Elliott* v. *Puget Sound etc. S. & S. Co.*, 22 Wash. 220, 60 Pac. 410; *D. M. Osborne & Co.* v. *Walther*, 12 Okl. 20, 69 Pac. 953.)

MR. JUSTICE SANNER delivered the opinion of the court.

The complaint in this action declares upon three promissory notes executed and delivered by the defendant (respondent here) to the plaintiff (appellant here) for the aggregate sum

of $4,800, besides interest and attorneys' fees. The answer, admitting the execution and delivery of the notes, alleges that they were given on account of the purchase price of a certain outfit consisting of a traction engine and two steel wagons, bought by the defendant for the purpose of hauling freight, and sold by the plaintiff under the warranties that such outfit would be fit and suitable for such purpose and would, if the roads were in good condition for travel and not wet, slippery or covered with snow, haul forty tons of freight between defendant's residence and Norris at the rate of two miles per hour, and not consume over five tons of Red Lodge coal on the trip; that the outfit wholly failed to meet these warranties and, after repeated efforts to make it effective, turned out to be useless and valueless to the defendant. By way of counterclaim, damages in the sum of $8,500 were demanded, consisting of payments made upon the purchase price, loss in contracts and moneys expended in testing the outfit and in the effort to make it respond to the warranties. The reply admits that plaintiff knew defendant's purchase of the outfit was for the purpose of hauling freight between his ranch and Norris, as well as for other purposes, and that it made the warranty above set forth, but avers that said outfit was purchased and said warranty was given under a written order executed October 2, 1908, by the defendant which contained certain express stipulations none of which were complied with by the defendant, and that by reason of such noncompliance the defendant must be held to have accepted said outfit and to have waived the present and all other claims for damages on account of any alleged deficiencies therein.

Upon the trial the court instructed the jury not to consider the items of loss in contracts and moneys expended in testing the outfit because no competent evidence had been presented in support of them. The verdict was for the defendant, fixing his damages at $5,418.00. By stipulation of counsel, this award was stricken from the verdict and it was recorded as simply for the defendant. Judgment for the defendant for his costs was duly entered thereon. From that judgment and also from an order denying its motion for a new trial, the plaintiff has appealed.

1. The defendant presents the question that the appeal from the order denying the motion for a new trial cannot be considered because the notice of intention was not filed in time, and because the bill of exceptions on motion for new trial was not presented for settlement as required by section 6788, Revised Codes. The pertinent facts as we glean them from various parts of the record are these: The verdict was returned on May 4, 1912, and the minutes of court disclose that upon the receipt of the verdict and the discharge of the jury "the plaintiff is now given sixty days' additional time to that allowed by law in which to file affidavits and prepare and file bill of exceptions on motion for new trial." The bill of exceptions as afterward presented for settlement by the plaintiff and as settled by the trial judge, recites that upon the return of the verdict "on application of plaintiff a stay of execution was granted until final disposition of the motion for new trial," *etc.* The judgment bears date May 4, and was therefore presumably entered on the day of the verdict, but the minutes of that day make no mention of the signing or entry of the judgment; hence we cannot determine whether this occurred before or after the order extending time and staying execution, within or without the presence of plaintiff's counsel. On May 6 the clerk of the district court mailed a letter to plaintiff's counsel to the effect that judgment was signed on May 4, and on May 15 counsel for defendant served upon counsel for plaintiff a formal notice of the entry of judgment. The notice of intention to move for a new trial was served on May 21 and filed the next day. The court minutes of June 29 recite: "Comes now W. A. Clark, Esq., of counsel for defendant; whereupon the plaintiff's time for preparing and filing his bill of exceptions on motion for new trial is extended until August 15, 1912." On the last mentioned date the court on application of counsel for plaintiff, further extended the time to September 15, 1912. On September 14, 1912, the plaintiff served on defendant's counsel and delivered to the clerk its proposed bill of exceptions, and thereafter, by stipulation, the defendant was given until November 20, 1912, to propose amendments, and his proposed amendments were on

November 18, 1912, delivered by his counsel to the trial judge to whom the proposed bill of exceptions had been handed by the clerk. On December 23, 1912, the trial judge, of his own motion, set the settlement of the bill of exceptions for January 3, 1913, on which day it was continued until January 15, 1913, when, over defendant's objection, it was settled and allowed.

The claim that the notice of intention was not filed within ten days after notice of the entry of judgment, as required by [1, 2] section 6796, Revised Codes, is based upon two propositions: (a) That counsel for plaintiff, by procuring time and a stay of execution, admitted his knowledge of the entry of judgment and waived notice thereof; and (b) the clerk's letter of May 6 operated as such notice. While it is true that a stay of execution assumes a judgment upon which an execution may be issued, it does not follow that a stay cannot be sought before judgment and in anticipation thereof. Arrangements between counsel even before verdict, for an allowance of time in which to file a bill of exceptions on motion for a new trial, or for a stay of execution pending motion for new trial, are not unknown in this state, and whether to be approved or not, neither that course nor the mere asking for time or stay, necessarily implies the presence of counsel at the entry of judgment or actual knowledge of such entry. The presumption is that the notice of intention was served and filed in time, unless the contrary affirmatively appears from the record (*State ex rel. Cohn* v. *District Court*, 38 Mont. 119, 99 Pac. 139); but in the case at bar the record does not affirmatively show that plaintiff's counsel was present when judgment was entered, or that it was entered before the extension of time and the stay of execution were asked. Therefore, to insist that the time within which plaintiff might file notice of intention to move for a new trial, began with the date of the judgment, defendant must rely, not upon the presence and knowledge of his adversary, but upon a technical waiver of the notice of entry, arising out of the mere fact that such extension of time and such stay were procured. We may assume, without deciding, that a waiver did thus arise; yet it was so highly technical in character as to be unavailing

to the defendant, unless he relied upon it, and that he did not rely upon it but waived it in his turn, the record decisively shows. For example: On May 15, 1912, he caused formal notice to be served on plaintiff's counsel, stating that the judgment had been entered and "you are to govern yourselves accordingly"; it is inconceivable that when this notice was served, defendant intended to claim that such notice had been waived.

[3] Again: Whatever untimeliness there may have been in filing the notice of intention, was known to defendant's counsel on June 29, and yet on that day one of them appeared in the district court and caused an order to be entered extending plaintiff's time to file its bill of exceptions; and this is a far different thing from a mere assent to such extension before service of notice. Finally: After the plaintiff's bill of exceptions was made up and served, a stipulation was entered into extending defendant's time to propose amendments—a thing wholly useless if there was not a timely notice of intention upon which to base the motion. In *Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735, this court, after indicating that unless the notice of intention is served within the time allowed by law, a new trial cannot be granted, expressed the view that "the giving of the notice of intention in time, or at all, may be waived in various ways by counsel of the adverse party." Some of these ways are, in our judgment, illustrated in the present case.

That the letter of the clerk mailed on May 6, assuming it to [4] have reached plaintiff's counsel, was not a sufficient notice of the entry of judgment, is settled by the decision in *State ex rel. Cohn* v. *District Court, supra.*

As we understand the argument in connection with defendant's [5] second proposition, it is that, although the proposed bill had been handed by the moving party to the clerk and, while awaiting amendments under the stipulation extending the time therefor, had been by the clerk delivered to the judge, and although within the time allowed by the stipulation the proposed amendments were delivered by defendant's counsel to the judge, so that the judge was within ten days after the amendments were proposed, in possession of both the bill and the amend-

ments, the statute (sec. 6788) was not satisfied, because the plaintiff's counsel did not personally present them together to the clerk or to the judge, and because the settlement was taken up, not at the instance of the plaintiff, but upon the court's own motion. In *Girard* v. *McClernan,* 39 Mont. 523, 105 Pac. 224 (followed, *Freeman* v. *Weare,* 42 Mont. 472, 113 Pac. 466), three ways were pointed out in which the statute might be complied with, to-wit: (1) Present the proposed bill and amendments to the judge upon five days' notice to the adverse party; (2) deliver them to the clerk; or (3) deliver them to the judge. Touching these methods it was said: "If the moving party pursues either the second or third remedy above, he is relieved from further responsibility. It is true that there is no procedure provided for the settlement of the bill when the proposed bill and amendments are delivered to the judge himself; * * * but * * * we think the statute clearly implies that the judge shall settle immediately or fix a subsequent date for settlement." It may be conceded that in the present case the lodgment of the proposed bill with the clerk before the time expired for amendment was ·premature, and that if the defendant's counsel had delivered the original draft of the amendments to counsel for plaintiff, it would have devolved upon the latter to see that the bill with the amendments reached the hands of the judge; but when, as the result of the act of defendant's counsel, the bill and the amendments met in the hands of the judge, the statute was substantially satisfied under the third method above mentioned. The plaintiff was relieved from further responsibility and the action of the judge in fixing a day for the settlement was authorized.

2. The burden of this appeal is that the evidence did not justify submission of the case to the jury and does not support the [6] verdict. Considering only the evidence adduced on behalf of the defendant, which was not materially aided by anything produced on the part of the plaintiff, we learn that the outfit was purchased under a written order signed by the defendant, in connection with the special warranty above described, which was signed by W. O. Miller as agent for the plaintiff company.

The price was $7,300, payable, $500 with the order, $1,500 December 1, 1908, and the balance in subsequent installments. The order contained the following provisions:

"If upon six days' use, this traction freighting outfit fails to do all we claim for it, the purchaser shall give immediate notice to The Best Manufacturing Company at its home office in San Leandro, California, by registered letter, and allow time to send a man to put the same in working order. If it cannot then be made to do good work, the undersigned shall return it at once to The Best Manufacturing Company, at San Leandro, California, and the payment or payments made on this contract, except freight charges one way, shall be refunded.

"The Best Manufacturing Company shall under no circumstances incur any further or other liability on this contract to the undersigned than the repayment aforesaid, either for delay, or loss of time, or loss of work, or loss from any cause by the use or attempted use of said outfit, or for personal injuries received by the undersigned; or any of his employees, from said outfit, or for nonshipment, delay in shipment, or transportation of said outfit, or for damages upon express or implied warranty of said outfit, or upon any other cause of action whatsoever.

"Continuous use of said outfit for 20 days, or use at intervals during 20 days shall be deemed an acceptance of said outfit by the undersigned and such acceptance shall be a waiver of all claims for damages against the said The Best Manufacturing Company upon express or implied warranty, or for or upon any cause of action whatsoever.

"And it is understood that no agent has any power to make any additions to, or vary the terms and conditions hereof."

The outfit arrived at Norris in November, and from there was driven, with some trouble, to defendant's ranch. Arrived at the ranch the defendant and plaintiff's agents set about making a test of it under the special warranty; but this was abandoned on account of the condition of the roads, without any time being fixed for its renewal and without anything said about waiving it. In view of the fact that the defendant would have no use of it until the following spring, it was arranged

and assented to by the company that of the $1,500 stipulated to be paid December 1, 1908, he should and did pay $500, the balance of $1,000 going over to April 1, 1909; and that the interest on the other deferred installments should run from April 1, 1909, instead of from November 15, 1908. In the spring of 1909 the defendant paid the $1,000 put over from the preceding December and used the engine for plowing 440 acres of land belonging to himself and neighbors. In these operations he had trouble keeping up steam. On July 23, 1909, he wrote the company, asking an extension of time to meet an overdue installment, but made no complaint of the outfit. Later in the same year he used the engine for threshing 15,000 to 18,000 bushels of grain, but it was not a success even for that. On inspection by the deputy state boiler inspector in September, the boiler was found capable of developing not to exceed sixty horse-power and was rated to carry 160 pounds pressure. No attempt to haul grain to Norris was made, and about this the defendant testified: "I knew in the fall of 1909 that I could not haul forty tons over the range from my place to Norris; yes, absolutely, and that is the reason I did not try"; but on November 9, 1909, he again wrote the company for an extension of time to meet payments, without any reference to such failure. In February, 1910, he again wrote to the company about an extension, stated his intention to haul lumber with the outfit for the Madison River Power Company, but expressed no dissatisfaction. In July, 1910, he hauled about 44,000 pounds of wool to Norris, but the engine steamed poorly, never made two miles an hour, and consumed much more than five tons of coal. After returning home he did some threshing with the engine and then hired the outfit to one Staudaher at Alder for freight-hauling at $50 per day. On the way over to Alder and while having trouble with the steam, he met Miller and one Yonkers, who undertook to assist. At their suggestion some grate-bars were changed, the flues were cleaned, coal was substituted for wood as fuel and Yonkers took the throttle; but there was no material improvement. After reaching Alder, Staudaher used the outfit for twelve days under the $50 per day arrangement, and for

eighteen days more on a profit-sharing basis; but the defendant says no profit accrued to him because of poor steaming. In 1911 it was used for plowing and for pulling a well-pile, and was inspected again by the boiler inspector, who found that the tubes were leaking because of the style of construction, and he reduced the pressure-rating to 150 pounds. In 1912 it was used on McKay's ranch to raise some casing. No return or offer to return the outfit to the company was ever made, nor was any notice of its failure ever sent by registered mail or otherwise to the home office of the company. The reasons given by the defendant for this are that he had not consulted counsel, and did not fully understand his rights, and had often seen and complained to Miller, who assured him that the company would make good any deficiency.

The inadequacy of this defense would seem to be settled by the decision of this court in *Berlin Machine Works* v. *Midland C. & L. Co.*, 45 Mont. 390, 123 Pac. 396. But it is said by counsel that the provisions above quoted have no application to the special warranty, because the contract is dated October 2, 1908, at Jeffers, Montana, and the warranty is dated October 3, 1908, at Bozeman, Montana. The warranty appears to have been written on a letterhead of the Bozeman Machine Works, which may account for "Bozeman, Montana" in the date line. At any rate, the defendant himself testified: "I think the contract was drawn up; I think they tried to induce me to sign it, but I * * * wanted to wait until the next day to think it over, to talk it over with my son. * * * If I remember right, the next day I still was in doubt about putting so much money into a machine without knowing whether it would do the work. * * * Finally, Mr. Miller and Mr. Crandall made me the proposition that they would guarantee it to haul forty tons at the rate of two miles an hour between my place and Norris. * * * It looked pretty good to me, so I signed the contract the next day. They put the guaranty for forty tons over the Norris road at two miles an hour in a separate writing. * * * Mr. Miller gave it to me when I purchased the outfit. * * * I read the contract over and I suppose I assented

to all of its conditions by signing it." So that the order containing the stipulations above quoted was not given impulsively but with deliberation and knowledge and with distinct reference to the special warranty. This order, in connection with the warranty, became a contract when accepted by the company, and as entered into its terms were clear and explicit. The plaintiff agreed to furnish an outfit of a certain character and capacity, and the defendant agreed that continuous use of it for twenty days, or at intervals during twenty days, should constitute an acceptance. Even-handed justice required the plaintiff to keep its promises, and it equally required the defendant to observe his part of the agreement. (*Murphy* v. *Russell & Co.*, 8 Idaho, 133, 67 Pac. 421.) The question is not whether such stipulations as those under review would measure up to the highest ethical standards, but whether the defendant, having entered into the contract with his eyes open, with a clear perception of its meaning, should be bound by it. It is not a function of the courts to make contracts for private parties, but when private parties freely contract with each other and the terms of their contracts are not unlawful, it is the duty of courts to enforce them. If the defendant expected to stand upon the warranties, his course under the contract was to ascertain whether the outfit could meet the warranties before putting it to other uses; or at least not to use it after ascertaining that it was a failure. He used it not only at intervals during twenty days, but at intervals during three years. For at least two-thirds of that time he was aware that it did not and could not meet the warranties. He kept it, used it, hired it out, received money for its use, paid money on its price; in so doing his acceptance of it was complete. (*Kingman* v. *Watson*, 97 Wis. 596, 73 N. W. 438; *Woodward* v. *Emmons*, 61 N. J. L. 281, 39 Atl. 703; *Massillon E. & Thresher Co.* v. *Schirmer* (Iowa), 93 **[7]** N. W. 599.) But while an acceptance does not ordinarily waive a breach of warranty (35 Cyc. 430), the parties to this contract specifically agreed that such acceptance should constitute a waiver by the defendant "of all claims for damages, either upon express or implied warranty, or for or upon any

other cause of action whatsoever.'' Language could go no further. Unless this stipulation is invalid or was waived, its effect was automatic and conclusive. (*Russell* v. *Murdock*, 79 Iowa, 101, 18 Am. St. Rep. 348, 44 N. W. 237; *Yeiser* v. *Russell & Co.*, 26 Ky. Law Rep. 1151, 83 S. W. 574; *Nichols, Shepard Co.* v. *Rhoadman*, 112 Mo. App. 299, 87 S. W. 62; *Scott* v. *Vulcan Iron Works Co.*, 31 Okl. 334, 122 Pac. 186.)

It is insisted by the defendant that the provision in question is void as a stipulation for liquidated damages under section [8] 5054, Revised Codes, and as a restriction upon the right to relief under section 5056, Revised Codes. As to the alleged contravention of section 5054, the argument is directed mainly to the provision that upon a failure and return of the outfit, the company should refund the payments made, with freight one way, and should not be liable for any other or further demand. But as we view the case, this provision is not involved; it may be void under the decision in *Deuninck* v. *West Gallatin Irr. Co.*, 28 Mont. 255, 72 Pac. 618, as urged; if so, the contract stands as though the provision had never been written, and the matter is in nowise affected. The process of reasoning, however, by which it can be held void as in contravention of section 5054, Revised Codes, has no application to the provision that twenty days shall constitute an acceptance and waiver. No argument is adduced in support of the contention that the provision in question is obnoxious to section 5056, Revised Codes. That section reads: ''Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.'' Some of the conditions which this section is designed to meet are illustrated in *Randall* v. *American Fire Ins. Co.*, 10 Mont. 340, 24 Am. St. Rep. 50, 25 Pac. 953; *Cotter* v. *Grand Lodge A. O. U. W.*, 23 Mont. 82, 57 Pac. 650; and *Wortman* v. *Montana Central Ry.*, 22 Mont. 266, 56 Pac. 316; and within its purview are also provisions in a contract by which enforceable rights thereunder are lost unless sued upon within a stipulated time. The provi-

sion before us merely provides what shall be deemed an acceptance and waiver, and does not attempt to deny access to the courts or to prescribe a time within which such access may be had for the vindication of whatever rights the defendants might have under the contract. As aptly said in the reply brief: "The question is as to whether the defendant complied with the contract in such a way as to have rights to enforce, not how they may be enforced." It is a well-recognized rule that parties may by the express terms of their contract make the retention of property without complaint conclusive evidence that the warranty is fulfilled to the satisfaction of the purchaser. (*Murphy* v. *Russell & Co., supra.*)

Neither is it correct to say that if the stipulation just considered be valid, it goes only to defendant's right to maintain his counterclaim, and not to his right to resist payment of the purchase price. The situation is exactly the reverse. Under the contract, use of the outfit for twenty days constituted not merely a waiver, but an acceptance and a waiver; if the acceptance had not been made to also constitute a waiver, it would still remain an acceptance. A breach of warranty which has not been waived may be pleaded by way of counterclaim to an action on the purchase price, but it cannot be relied on as a defense, after acceptance and retention by the purchaser, with knowledge of the breach. (Note to 4 L. R. A. (n. s.) 1167 *et seq.;* note to 35 L. R. A. (n. s.) 501; 35 Cyc. 42). To this rule there are certain apparent exceptions—as where an offer to return would be useless, or where the property has become nonexistent, or where it is wholly worthless for any purpose; but these exceptions have no relevancy here.

Lastly, it is urged that the company cannot claim an acceptance by use, for the reason that Miller had knowledge from personal observation as well as from the complaints of the defendant, that the outfit was deficient, and assured the defendant that the company would make it good. The argument presented in support of this position and the authorities cited to sustain it may suffice to establish a waiver by the company of the clause for written notice; that we do not decide,

because the case does not rest upon it. The facts are that Miller saw the outfit in operation but twice—once in November, 1908, when the test was attempted, and again in the summer of 1910. It cannot be claimed that the attempted test in 1908—abandoned because of the condition of the roads—advised Miller, any more than it advised the defendant, of any essential deficiency; hence if Miller had any such knowledge from personal observation, he must have obtained it in the summer of 1910 after the outfit had been used for more than a year by the defendant. As to the complaints to Miller, the defendant testified that they met about twice a year; he did not complain at all these meetings and he does not show that he made any complaint to Miller or had any assurance from him before an acceptance by use for twenty days had become a fact. Under these circumstances the express provision of the contract that "no agent has any power to * * * vary the terms and conditions hereof" becomes pertinent. (*Collins* v. *Metropolitan L. I. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092.) To this we may add, that the defendant's use of the outfit continued even after it became plain that Miller's assurances were unproductive.

On the whole case we are convinced that neither defense nor [12] counterclaim was or can be sustained. The defendant submitted for the consideration of the court and jury all that he had to offer in resistance to the plaintiff's demand, and no good purpose could be served by a retrial. The judgment and order appealed from are therefore reversed and the cause is remanded, with directions to enter judgment for the plaintiff for the principal and interest due upon the notes set out in the complaint and for such attorneys' fees as the court shall adjudge to be reasonable.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied June 16, 1914.