# Richmond

Louis C. Dimos v. A. W. Stowe.

June 16, 1952.

Record No. 3891.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Wilbur C. Hall* and *Charles Pickett,* for the plaintiff in error.

*Rust & Rust,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

In January, 1950, A. W. Stowe filed a notice of motion for judgment against Louis C. Dimos, seeking to recover $1,365, with interest thereon from August 30, 1949, until paid. This sum represented the purchase price of one De Humatic cooling unit alleged to have been sold by Stowe to Dimos.

To the notice of motion for judgment Dimos filed an answer denying that he was indebted to Stowe in any amount, contending "That the De Humatic cooling unit was installed on trial and proved to be unsatisfactory and plaintiff was notified to that effect and was requested to remove the same, but has neglected and failed so to do."

The issue thus joined was tried before a jury in the Circuit Court of Loudoun county on June 23, 1950, and resulted in a verdict for the amount sued for in favor of Stowe, with interest from August 30, 1949. A motion was made by Dimos to set aside the verdict. The motion was denied; however, the court required Stowe to remit interest to the date of the verdict, whereupon an order was entered granting judgment to Stowe for the amount of $1,365, with interest thereon from June 23, 1950. It is to this judgment that we granted Dimos a writ of error.

The parties will here be referred to as plaintiff and defendant, the position they occupied in the trial court.

The facts out of which the controversy arose are briefly as follows:

The plaintiff, a plumbing, heating and refrigeration contractor, became the representative or distributor for De Humatic cooling units approximately two weeks prior to August 1, 1948. On August 24, 1948, plaintiff and a Mr. Peck, the manufacturer's representative, called upon defendant who operated the New York cafe in the town of Middleburg, for the purpose of selling him a cooling unit for his place of business.

On this occasion an oral contract was entered into by the plaintiff and the defendant whereby the plaintiff would install one of the units in the restaurant, on trial, for a period of one

week. It was understood that if upon completion of the test the defendant found the unit would satisfactorily produce cool air during normally warm weather or hot weather then payment for the unit was to be made as agreed.

The installation required three days and was completed on September 4, 1948. After the installation had been completed the weather became cool and did not admit of a satisfactory test. Therefore the trial period was agreed to be extended until such time as there should be hot weather, or the summer of 1949.

The plaintiff sent Melvin Fadley, a mechanic, to disconnect the water in the unit in the fall of 1948, to prevent freezing during the winter. Fadley returned in the spring of 1949 to reconnect the water to the unit but was told not to do so because it could be taken care of by someone at the cafe.

Defendant failed to give plaintiff any notice of dissatisfaction at any time during the fall or winter of 1948-49, or during the spring or early summer of 1949.

On August 1, 1949, plaintiff billed defendant for the unit and on August 2nd defendant wrote plaintiff that he did not want it and ordered its removal. This letter precipitated the suit.

On cross-examination defendant stated that he had made up his mind during the winter of 1948 that he did not desire to keep the unit. Testifying further he said:

"Q. Did you ever give any notice of this making up of your mind, as you put it?

"A. To whom?

"Q. To Mr. Stowe.

"A. I didn't think it was necessary.

"Q. You didn't think it was necessary?

"A. No, sir, because the unit belonged to Mr. Stowe and not to me. Mr. Stowe was supposed to come and get the money or get the unit, and I figured it was his unit, it was not my worry.

"Q. In other words, you figured then it was unnecessary to give Mr. Stowe any notice of your dissatisfaction with the unit?

"A. Yes, I did, because I figured Mr. Stowe was coming to get that information from me."

As above noted, the defendant stated in his answer to the notice of motion that he had notified the plaintiff to the effect that the unit "was installed on trial and proved to be unsatisfactory", etc. The only notice appearing in the record, except the letter of August 2nd, comes from the testimony of defendant

and is as follows: "In the spring the service man came, Mr. Fadley. He came there to service the unit and he made his intentions known, and I told Mr. Fadley, I says, 'I don't want you to service the unit; I am not going to buy it. I don't want it.' And I presume I told him to convey the message to Mr. Stowe."

Fadley testified that he was employed by the plaintiff as a service man and carpenter, that he went to the cafe in the spring of 1949 for the purpose of servicing the cooling unit, that the defendant never sent such message to his employer but, on the contrary, defendant said "he would like to have the louvers adjusted, and also something concerning a speed-regulator."

Fadley was asked on cross-examination:

"Q. Did Mr. Dimos ever tell you to tell Mr. Stowe to take out the equipment, that he didn't want it?

"A. Absolutely not."

The assignments of error relied upon are:

"1. The verdict of the jury was contrary to the law and the evidence and was without evidence to support it.

"2. The court erred in refusing to grant the defendant's motion to set aside the verdict of the jury and to grant him a new trial.

"3. The court erred in granting plaintiff's instruction No. 2.

"4. The court erred in granting plaintiff's instruction No. 3."

The first two assignments may be treated together. The defendant contends that in no sense was this an absolute sale but rather a contract for a sale on approval or trial. The plaintiff admits this to be the case. Such a contract may be characterized as an executory contract which would become an executed contract either upon confirmatory action on the part of the buyer or by unreasonable inaction on his part. Inaction on the part of the buyer in a case of this kind may transform a sale on approval or trial into an absolute sale.

Here the cooling unit was installed by the seller at considerable trouble and expense, the understanding being that the defendant would give it a trial and if it proved satisfactory he would purchase it. The defendant was given ample opportunity to test the equipment. The test period was extended from the fall of 1948 until the weather became warm in the summer of 1949.

According to defendant's own admission, he decided "in his

own mind'' in the winter of 1948-49 that he did not intend to keep the equipment. Yet he remained silent, never intimating his decision to plaintiff. Under such circumstances a jury question was presented as to whether or not the defendant, after deciding that he would not keep the machine, had retained it for an unreasonable time without notifying the plaintiff of his decision.

■ Under a contract for sale on approval or trial certain obligations are placed upon the buyer as well as upon the seller.

''It is true, that where the contract is for a sale, on trial, or if the goods shall suit the taste of the buyer, the contract is not executed till the buyer has had an opportunity to try or taste.'' *Haxall Bros. & Co.* v. *Willis,* 15 Gratt. (56 Va.) 434, 452. But the buyer is under an obligation to make a fair test and to let his decision be known to the seller within a reasonable time. 46 Am. Jur., Sales, § 495, page 658.

■ ''It is inconsistent with the nature of the right or privilege thus given the purchaser, that there should be any unnecessary delay in the exercise of it. The seller in the meantime is deprived of the use of his property and perhaps of the opportunity for resale. * * * These considerations are sufficient to require promptness and forbid needless delay on the part of the purchaser. If it appears that he has ample time and opportunity to test and examine the article, and ascertain its quality or capacity with reference to the warranty, and might have conveniently done so, but neglected to do it, such neglect should be regarded as a waiver of the right to rescind, and as an election on his part to retain the property, * * *.'' *Pratt-Gilbert Co.* v. *Hildreth,* 24 Ariz. 141, 149, 207 P. 364, quoting from *Boothby* v. *Scales,* 27 Wis. 626. See also *Cookingham* v. *Dusa,* 41 Kan. 229, 21 P. 95; *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 P. 653; *Southern Gas, etc., Co.* v. *Adams & Peters* (Tex. Civ. App.), 169 S. W. 1143; 2 Black on Rescission and Cancellation, § 542.

■ Frequently the contract of the parties for sale on trial or approval fixes a time within which it must be determined that the sale shall be consummated. ''If the contract does not fix a time, the law in this case, as in others, adopts the rule of the time that is reasonable under the circumstances. If the buyer retains the goods beyond such reasonable time his title cannot thereafter be avoided.'' Williston on Sales, Rev. Ed., § 271; *Buckstaff* v. *Russell & Co.,* 79 F. 611, 49 U. S. App. 253, 25 C. C. A. 129; *Roach* v. *Warren, etc., Co.,* 151 Ala. 302, 44 So. 103; *House* v.

*Beak,* 141 Ill. 290, 30 N. E. 1065, 33 Am. St. Rep. 307; *Greacen* v. *Poehlman,* 191 N. Y. 493, 84 N. E. 390; *Ide* v. *Brody,* 156 Ill. App. 479; *Fountain* v. *Jones,* 181 N. C. 27, 106 S. E. 26.

"Where there is a sale on trial, there is no sale until the approval is given, either expressly or by implication resulting from keeping the goods beyond the time allowed for trial, which is a reasonable time if not expressly fixed; and the failure to return the goods within the time specified for trial, or within a reasonable time, makes the sale absolute. Benjamin on Sales (2nd Am. Ed.), sec. 595; Schouler's Personal Property, Vol. 2, pp. 309-10; *Wood Mach. Co.* v. *Smith,* 50 Mich. 565, 15 N. W. 906, 45 Am. Rep. 57." *Brown* v. *Austin-Western Co.,* 111 Va. 209, 212, 68 S. E. 184.

"Where goods are sold upon trial or approval, it is a general rule that the buyer may subject the subject-matter of the sale to a test or trial in a manner which will enable him to determine whether or not the article fulfils the terms of the contract; if he determines that it does not, it is his duty to give notice to the seller of this fact and of his rejection of the article for this reason. * * * Retention and use of the article after receiving it, or after testing it, without giving notice of disapproval, converts the executory contract into one of absolute sale." 78 A. L. R. 533.

"When goods are manufactured or sold, and delivered subject to approval, it is incumbent on the purchaser, unless he approves, to express disapproval within a reasonable time or within the time limited by the contract, and the absence of such expression is sufficient evidence of approval, or at least of a waiver of the right to insist upon approval as a condition precedent to a recovery by the seller." 78 A. L. R. 535.

"Timely notice of disapproval or rejection of the article must be given. Otherwise, the purchaser will be deemed to have made the sale absolute by electing to retain the goods. * * * If the buyer upon testing the article determines that it does not suit his purpose, it is his duty to give notice of this fact to the seller. * * *." 46 Am. Jur., Sales, § 497, page 659.

Clearly it was a jury question in this case as to whether or not the defendant's actions were reasonable under the circumstances.

The defendant's theory of the case was submitted to the jury under ample instructions. He objects, however, to two instruc-

tions given on behalf of the plaintiff. Instruction No. 2, the subject of his third assignment of error, reads:

"The court instructs the jury that if you believe from the evidence that the De Humatic Cooling Unit was sold on trial and no definite time for the trial period was stated and further that the defendant retained the machine for an unreasonable period of time without notification to the plaintiff that he did not wish to accept the unit, then defendant is deemed to have accepted it, and the jury shall find for the plaintiff in the sum of $1,365.00, the amount sued for, with interest from the time of such implied acceptance."

This instruction correctly states the law from the plaintiff's viewpoint, and, as indicated herein, it is in keeping with the majority rule. Under the facts proven it was properly given.

The subject of the fourth assignment is instruction No. 3 which reads:

"The court instructs the jury that if you believe from the evidence that Mr. Fadley was authorized by Mr. Stowe to make contracts on behalf of Mr. Stowe with third persons and to generally represent him in his business then he shall be deemed in law to be an agent; however, if on the other hand you believe from the evidence he did not have such authority but was merely an employee i.e. he merely rendered mechanical services for Mr. Stowe as directed by him, then in law he is not an agent but an employee or servant."

This instruction correctly states the law. Dimos contended that he told Fadley in the spring of 1949 that he did not desire to keep the unit. Fadley denied this. The plaintiff took the position that Fadley, who was employed as a mechanic and carpenter, was not such an agent as could generally represent the plaintiff in making contracts, etc., and therefore even if Dimos had told Fadley that he did not intend to keep the cooling unit this would not amount to notice to Stowe.

Fadley's testimony clearly demonstrates the extent of his employment. He was a mechanic and carpenter. His limited employment gave him no right to bind Stowe in any contract. He was not the business representative of Stowe and had no authority to act in his place and stead. His acts were confined to what he was directed to do.

"The line of demarcation between the relation of principal and agent, and that of master and servant is exceedingly dif-

ficult to define * * * . The true distinction is to be found in the nature of the undertaking, and the time and manner of its performance. Agency properly relates to transactions of business with third persons, and it implies more or less of discretion in the agent as to the time and manner of his performance. Service, on the other hand, has reference to actions upon or about things. It deals chiefly with matters of mere manual or mechanical execution, in which the servant acts under the direction and control of the master." *Merriman Co.* v. *Thomas & Co.,* 103 Va. 24, 48 S. E. 490; *Taylor* v. *Sutherlin-Meade Tobacco Co.,* 107 Va. 787, 60 S. E. 132, 14 L. R. A. (N. S.) 1135.

"The vital point of distinction is that the agent is not only employed by the principal, but represents him as well. He is the business representative of the principal and acts not only for the principal, but in the place and instead of the principal. The servant, on the other hand, simply acts for the principal, and usually according to his direction without discretion." 2 Am. Jur., Agency, § 7, page 16.

Notice to Fadley, in his capacity as servant, would not amount to notice to Stowe. 2 Am. Jur., Agency, § 373, page 291.

The case was submitted to the jury under instructions which properly covered the law dealing with both the contentions of the plaintiff and the defendant. The jury's verdict has received the approval of the able trial judge and it will not be disturbed.

For the reasons assigned the judgment is

*Affirmed.*