Elige Lyle SIMON et al., Plaintiffs,

v.

Esther MARLOW et al., Defendants.

Civ. A. No. 80–0130(H).

United States District Court,
W. D. Virginia,
Harrisonburg Division.

April 29, 1981.

Robert H. Diday, Jr., Reston, Va., for plaintiffs.

Edward F. Greco, Front Royal, Va., Thomas J. Bondurant, Jr., Asst. U. S. Atty., Roanoke, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiffs, Elige Lyle Simon and Elizabeth O. Simon, filed this action to adjudicate a disputed title to certain real property, located in Front Royal, Virginia, in which the United States of America claims an interest. The United States acquired an interest in this property subsequent to an alleged invalid conveyance. The other defendants acquired an interest in the property after the same conveyance. This court has jurisdiction of this action pursuant to 28 U.S.C. § 1346. This case is now before the court pursuant to defendants motions to dismiss. The issues have been briefed and argued by counsel, and the matter is ripe for disposition.

### I. Statement of Facts

Plaintiffs, Elige and Elizabeth Simon, husband and wife, were the owners of a parcel of land located in Front Royal, Virginia, consisting of approximately two-thirds of an acre. On January 17, 1972, Mr. Simon executed a Power-of-Attorney appointing Mrs. Simon as his attorney-in-fact. This document was acknowledged and notarized by Mr. Simon before Wilma E. Wells, Notary Public, and was recorded with the Clerk of the Circuit Court of Warren County, Virginia, on February 2, 1972, in Deed Book 188, Page 557. The Simons then conveyed the property to Guy and Esther Marlow on February 12, 1972. That deed was recorded in Warren County, Virginia, in Deed Book 189, Page 108. In addition, two corrective deeds were executed by the Simons on February 27, 1975, with regard to this property; one recorded in Deed Book 222, Page 84, and the second recorded in Deed Book 222, Page 88. On January 3, 1978, Guy and Esther Marlow conveyed a portion of this property to James N. Marlow. James Marlow subsequently subdivided this property into four separate lots and constructed townhouses. The property became known as "redivision of Lot A1."

The first townhouse (A1–A) was conveyed to Daniel and Brenda Figgins by deed dated February 24, 1978. The Figgins conveyed the property by deed on December 21, 1978, to the United States of America, acting through the Farmers Home Administration (hereinafter FmHA). On March 12, 1979, the FmHA conveyed the property to Delores G. Gulick. The FmHA lent Ms. Gulick $27,650.00 to purchase the property and retained a Deed of Trust which is recorded in Deed Book 264, Page 414. On May 16, 1978, James Marlow conveyed the second property (A1–B) to Delmas and Sharon Boyd. That transaction was also financed by the FmHA who lent the Boyds $26,800.00 and retained a Deed of Trust recorded in Deed Book 255, Page 243. The third property (A1–C) was conveyed by James Marlow to Ralph and Deborah Nowell by deed dated April 25, 1978. The Nowells conveyed the property to the FmHA by deed dated May 19, 1980, and recorded May 30, 1980, in Deed Book 275, Page 278. The fourth property (A1–D) was conveyed by James Marlow to Dixie L. Alvarez on April 6, 1978. The purchase of that property was financed by the FmHA who retained a Deed of Trust recorded in Deed Book 253, Page 855. Therefore, the FmHA owns Lot A1–C and is the mortgagee of Lots A1–A, A1–B, and A1–D.

On September 2, 1980, the Simons instituted this action requesting the court to determine the interests of all parties in the above-mentioned properties. It is alleged in the Complaint that Mr. Simon's 1972 Power-of-Attorney is void due to his alleged incompetence and that Guy and Esther Marlow bought the property with full knowledge of Mr. Simon's incompetence. Additionally, plaintiffs allege in their Amended Complaint that the FmHA in Warren County, Virginia, had constructive [1]

---

1. *Black's Law Dictionary* defines constructive notice as follows:

Such notice as is implied or imputed by law, as in the case of notice of documents which

notice of Elige Simon's incompetence at the time he signed the power of attorney. This allegation is based upon the fact that an Assistant United States Attorney in Washington, D. C., had previously stipulated to Elige Simon's insanity in a murder trial.

## II. Merits of Plaintiffs' Claim Against the United States of America

■ In their amended complaint, the plaintiffs assert that since an Assistant United States Attorney in Washington, D. C., had actual notice of Elige Simon's alleged incompetence, then this notice was imputed to the FmHA in Warren County, Virginia. This assertion is apparently based on the fact that the Assistant United States Attorney and the persons who acted on behalf of the FmHA are federal employees and that the knowledge of one federal employee is imputed to all other federal employees. Plaintiffs also contend that since the United States had notice of Elige Simon's incompetence, it cannot receive a "laundered" title through a previous bona fide purchaser for value.

The court must find that notice of Elige Simon's alleged incompetence to an Assistant United States Attorney is not imputed to the FmHA. Establishing the United States as a principal, notice is not imputed from agency to agency merely because a federal employee of one agency has notice. Rather, notice is only imputed when the employee is acting "within the scope of his authority and in reference to a matter over which his authority extends." 3 Am.Jur.2d, Agency, § 273.[2]

The court finds that the scope of employment for an Assistant United States Attor-

ney is to prosecute criminal offenses against the United States, to represent the federal government in civil actions, and to institute proceedings for the collection of revenue, fines, penalties, and forfeitures. See 28 U.S.C. § 547. It is not within an Assistant United States Attorney's scope of employment to report the possible incompetence of criminal defendants to the FmHA for the purpose of putting it on notice in future real estate transactions. Id. Moreover, it is not within the FmHA's scope of employment in title clearances and loan closings to check with all employees of every United States Attorney's Office as to whether any prior grantor in every real estate transaction has previously been found to be incompetent. See 7 C.F.R. § 1807.1 et seq. Such a requirement would oppressively burden the FmHA's role in property transactions.

Therefore, the court must find that notice was not imputed to FmHA because it was outside the scope of the Assistant United States Attorney's employment to report the possible incompetence of criminal defendants to the FmHA.

■ Even assuming, arguendo, that notice was so imputed, the court must still find that the United States has clear title to the property since the property was conveyed through several bona fide purchasers for value between the plaintiffs' original grant and the acquiring of interests in the property by the United States. See Odom v. Riddick, 104 N.C. 515, 10 S.E. 609 (1890); Ashcroft v. Dearmond, 44 Iowa 229 (1876), as discussed in, A.L.R. 67, 69. Moreover, the Virginia Supreme Court has laid the foundation for this cleansing of title rule in

---

have been recorded in the appropriate registry of deeds or probate. Notice with which a person is charged by reason of the notorious nature of the thing to be noticed, as contrasted with actual notice of such thing.

**2.** For example, in the case of Dimos v. Stowe, in 193 Va. 831, 71 S.E.2d 186 (1952), an issue arose over whether notice to an employee regarding rescission of a contract was imputed to his employer. The court held that notice was

not imputed because the employee was hired in the capacity as a mechanic and carpenter and not for the purpose of representing the employer in contractual matters. In other words, although the employee had actual notice of the rescission, the employer was not bound by that notice because it was outside the employee's scope of employment to act on that information.

*Jackson v. Counts*, 106 Va. 7, 54 S.E. 870 (1906).[3]

■ The effect of *Jackson* was that the bona fide purchaser for value took clear title to the property. So, in a fee simple conveyance, the bona fide purchaser has absolute power to dispose of the property. *See Gordon Metal Company v. Kingan*, 132 Va. 229, 234, 111 S.E. 99 (1922). In other words, the fee simple bona fide purchaser can convey his land to anyone, whether or not the prospective grantee knows of the previous grantor's incompetence.

■ In the final analysis, any other doctrine than that advanced in the *Jackson* case would place all titles upon the hazard of disability with the discovery of any remote incompetent grantor. *See Odom*, 10 S.E. at 609. This disruption of alienation is repugnant to the concept of fee simple ownership in Virginia. Therefore, a subsequent grantee with notice of a prior grantor's incompetence takes clear title if it has been conveyed through a bona fide purchaser for value.

### III. Conclusion

In accordance with the reasons stated above, the court must conclude that the United States took clear title to the property in question.[4] Accordingly, the court will issue an appropriate Order dismissing the United States as a party defendant in this action. Since this dismissal would deprive the court of jurisdiction, the Order will also dismiss plaintiff's suit.

The clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

---

3. In *Jackson*, plaintiff-grantor conveyed land to defendant-grantee who subsequently conveyed it to a bona fide purchaser for value. Plaintiff charged that defendant, in collusion with plaintiff's brother-in-law, took advantage of plaintiff's incompetence in procuring the execution of the deed. Upon a finding that plaintiff was incompetent when the deed was executed and that defendant knew it, the trial court voided the deed as to defendant, but upheld defendant's conveyance to the subsequent bona fide purchaser for value. Plaintiff's remedy was damages from the original grantee who had knowledge of plaintiff's incapacity. The original grantor had no right of action against the subsequent bona fide purchaser for value. The Virginia Supreme Court affirmed the trial court's decision as being "plainly right". *Jackson*, 106 Va. at 13, 54 S.E. 870.

4. Since the United States has prevailed on this theory of the case, the court finds no need to address the remaining theories.