# Richmond.

## WILLIAM E. BLOXOM v. WILLIAM ROSE.

September 27, 1928.

The opinion states the case.

*James E. Heath,* for the plaintiff in error.

*Mears & Mears,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This suit was originally a proceeding by bill in equity brought by William Rose against Malcolm Bloxom, in his own right and as agent for William E. Bloxom, and said William E. Bloxom, jointly. The bill sets out complainant's case at length and in detail, but the salient facts alleged and relied on are: That said William E. Bloxom is the owner of a certain farm in Northampton county, and in the year 1918 went overseas as a private in the United States army, leaving said farm in charge of his father, said Malcolm Bloxom; that in the latter part of the year 1918, Malcolm

Bloxom, acting as agent for William E. Bloxom, contracted with said Rose to rent him the farm for the year 1919, upon the terms that said Rose was to furnish the labor necessary to properly cultivate the farm, and receive one-third of the proceeds derived from the sale of the trucks and other crops produced thereon during the year, after deducting from such proceeds the cost of fertilizer, seed potatoes and certain other expenses incidental to the harvesting and marketing of said products; that complainant accordingly moved on the farm with his family and proceeded to cultivate same as agreed; that he raised a large crop of spring potatoes, and when they were ready for market, he delivered them at the shipping point directed by said Malcolm Bloxom; that about the 18th of August, after all the potatoes had been shipped, said Malcolm Bloxom without cause repudiated the entire contract and refused to allow said Rose to continue his farming operations, although he was ready and willing, and repeatedly offered to carry out his contract for the rest of the year; that said Bloxom received all the proceeds for the potatoes, and also afterwards sold and appropriated the proceeds of the corn, sweet potatoes, and fall round potatoes which had been planted and cultivated by complainant; that neither of the said Bloxoms had accounted to complainant for his share of the profits to which he is entitled under the contract of rental, and refused to make any settlement with him. The bill prays for a discovery and accounting, and a decree for the amount due the complainant.

The defendant filed two special pleas and an answer making general denial of all the allegations of the bill. Subsequently, on their motion, the case was transferred to the law side of the court, and the plaintiff was required to elect whether he would proceed against

Malcolm Bloxom or William E. Bloxom. Plaintiff thereupon elected to continue the case against William E. Bloxom, the alleged principal, and dismissed same as to Malcom Bloxom, the alleged agent. There was a trial by jury, which resulted in a verdict for the plaintiff, Rose, in the sum of $1,350.00, with interest thereon from January 1, 1920, and the court gave judgment accordingly. Thereupon William E. Bloxom, the defendant in the court below, obtained this writ of error.

The parties will hereinafter be referred to according to their respective positions, as plaintiff and defendant, in the trial court.

Sundry exceptions were taken to the rulings of the court during the trial, but the first question presented by the petition is whether the evidence is sufficient to show that Malcolm Bloxom was acting as the defendant's agent when he entered into the contract with the plaintiff. That the evidence is sufficient to sustain the verdict in all other respects is not questioned, the only contention being that it fails to establish the existence of the alleged agency.

In the case of *Lysle Milling Co. v. Holt & Co.*, 122 Va. 565, 95 S. E. 414, the court quoted with approval from 1 Mechem on Agency (2nd ed.), section 299, as follows:

██ "It is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish agency in any given case. That is a question which must be determined in view of the facts in each particular case. Whatever form of proof is relied upon, however, must have a tendency to prove agency, and must be sufficient to establish it by a preponderance of the evidence. It may be said in general terms, however, that whatever evidence has a tendency to prove the agency is admis-

sible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it. So if evidence has just been introduced tending to prove the agency, or to make out a *prima facie* case thereof, the admissions and declarations of the alleged agent, if otherwise competent, may then be shown, and the whole case be passed upon by the jury."

In the instant case the fact that the defendant owned the farm in question together with the work team and farming implements thereon is undisputed. It is also uncontroverted that he was with the American army in France from June 15, 1918, until May 20, 1919, and did not return to the county until May 30th of that year; that he was unmarried; that his father, Malcolm Bloxom, owned and cultivated himself a small farm adjoining that of the defendant, and took over the management and control of defendant's farm and personal property from the time of his departure for Europe until his return to the county. It also appears that when the defendant went overseas he had between $1,000.00 and $1,500.00 on deposit in the Farmers and Merchants Bank, at Cape Charles, and checked on this account as he pleased during the time he was away, but gave his father authority to draw on said account in *his* (*the defendant's*) *name;* that on July 12, 1919, Malcolm Bloxom deposited $1,000.00 in said bank to the credit of defendant's account, and on July 16th, after practically all the spring potatoes had been marketed, he deposited $4,545.77 in the same bank for the same purpose. It further appears that all the spring potatoes raised on the farm were sold by Malcolm Bloxom through the East Coast Potato Distributors of Cape Charles, which kept the account during the year 1919 in the name of "Malcolm Bloxom, agent for Wm. E. Bloxom." The plaintiff and his wife both

testified that when Malcolm Bloxom first came to see the plaintiff in regard to renting him the farm, he told the plaintiff he was acting for his son (the defendant); and, on one occasion after his return home, the defendant assured Rose that he would see that he (Rose) got the one-third share to which he was entitled under the contract. These witnesses also testified that after the spring crops began to mature, Malcolm Bloxom started in to make himself very disagreeable and resorted to unworthy and contemptible tricks to get rid of the plaintiff, and kept up these practices until he finally repudiated the contract. Other slight circumstances tending to show the agency may be gathered from the record, but we think the evidence above stated, which must be taken as true, is fully sufficient to warrant the jury in finding that Malcolm Bloxom was acting as the agent of his son when he made the agreement with Rose.

It was, however, testified by both William E. Bloxom and Malcolm Bloxom that the defendant did not turn the farm over to his father as his agent, but to work and handle as said Malcolm Bloxom saw fit for his own benefit until the defendant returned from abroad and resumed control over it; that Malcolm Bloxom was so operating the farm during the year 1919; that the defendant had no interest in it whatever during that year, and derived no benefit from it; and when the defendant returned to Northampton county in 1919 and found the plaintiff working the farm, he did not interfere in any way with Rose or his father, but merely helped his father to harvest the crops.

It is argued that if plaintiff's evidence, as to the statement of Malcolm Bloxom that he was acting as defendant's agent, and the evidence afforded by the ledger sheet of the East Coast Potato Distributors,

above referred to, is eliminated, the testimony given by the Bloxoms conclusively shows that the agency upon which plaintiff's claim is based did not exist. We cannot agree with this contention.

■ It is well settled that one may be the agent of another as to third persons, although the relation of principal and agent does not exist. The contract between the parties is not alone to determine the question of agency when the rights of third persons are involved, but that is to be considered along with other facts and circumstances given in evidence which bear upon the question of agency. *McIntyre* v. *Smyth*, 108 Va. 736, 62 S. E. 930.

■ The evidence of the Bloxoms to the effect that the defendant turned his farm over to his father during his absence abroad for the father's sole benefit, and that no agency existed between them, cannot be taken to establish the fact that, as a matter of law, no agency existed; but, under the circumstances of this case, was only evidence to be considered by the jury along with the other facts and circumstances adduced. The jury were the sole judges of the credibility of these witnesses and of the weight to be attached to their testimony, and taking into consideration all the other evidence in the case and the inferences that may be fairly deduced therefrom, the jury had the right to find, as they did, that the father was acting as the defendant's agent, and not for himself alone, notwithstanding their denial.

■ The following statement from 21 R. C. L., page 820, seems pertinent here:

"Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed frequently is not available—but instead circumstances

may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract. And, notwithstanding the alleged principal and agent are the only witnesses called, and that they both categorically deny the existence of the relation, the jury have the right to consider and weigh the whole of the evidence, and the fair and reasonable inferences that may be drawn therefrom, and they may be entirely justified in disregarding the 'yes' or 'no' answers, and in reaching the conclusion that the evidence as a whole is sufficient to prove the relation of agency to exist."

It is also contended that the contract sued on comes within the seventh clause of the statute of frauds (Code 1919, section 5561), for the reason that it was made in the year 1918, and "contemplated that the plaintiff should work for Malcolm Bloxom throughout the year 1919." It appears that the agreement, though reduced to writing, was never signed by Bloxom. The agreement was not, however, for work to be performed, as argued, but for the lease of land. We do not think, therefore, that this clause of the statute is applicable.

The second assignment of error relates to the admissibility of the evidence of Malcolm Bloxom's statement, to the effect that he was acting as agent for the defendant in renting the farm to Rose. As will be seen by reference to the quotation from *Lysle Milling Co.* v. *Holt & Co.*, *supra*, in which case the same question was presented, it has long been well settled that when evidence has been introduced tending to prove the alleged agency, or to make out a *prima facie* case thereof, the declarations of the alleged agent then become admissible in corroboration; and the order in which such proof is introduced is within the discretion

of the trial court. (*McIntyre* v. *Smyth, supra.*) Aside from any other evidence, the mere fact that the defendant placed his farm under the exclusive management and control of his father when he left the country was of itself sufficient to create the presumption that Malcolm Bloxom was acting as defendant's agent in the management and operation of said farm; certainly with respect to third persons who had no knowledge of facts calculated to put them on notice to the contrary.

It is next contended that the court committed error in admitting evidence showing that the account of Malcolm Bloxom with the East Coast Potato Distributors, for the year 1919, was carried on the books of this concern as "Malcolm Bloxom, agent for William E. Bloxom."

While it seems that the member of the firm who testified in the case said, in answer to a question by the court, that he presumed the reason the account was so kept on their ledger was an inadvertence of the bookkeeper, and that he did not "recall" whether Malcolm Bloxom was at that time acting as agent for the defendant, he also testified that he knew Malcolm Bloxom did operate the farm as such agent "one year during the war," and that he was one of the firm's regular customers. In view of this evidence we think it was proper to admit the firm's ledger sheet for the year 1919 to show that it dealt with said Bloxom during that particular year as agent and not on his own account, as a circumstance to be considered by the jury in determining the fact of whether such agency existed; and especially so, as it may be assumed from the relations and course of dealing between Bloxom and said firm, that it was conversant with his farming operations. But even if it conceded that the ledger

sheet was not properly admissible, the error was harmless for the reason that the jury would have been justified in finding the same verdict if it had been excluded.

The fourth and fifth assignments to evidence given by the plaintiff's wife as to certain information she had obtained from the East Coast Potato Distributors in regard to a carload of potatoes which Malcolm Bloxom had disposed of, which did not appear on the firm's books; and as to the admission in evidence of certain records kept by plaintiff's wife of the produce sold from the farm by Malcolm Bloxom.

It would serve no useful purpose and unnecessarily prolong this opinion to discuss these assignments. To do so intelligibly it would be necessary to review practically the whole case. We, therefore, deem it sufficient to say that we have carefully considered the objections offered, and are of the opinion that the court was clearly right in admitting the evidence in question, in view of the issues involved.

The last assignment of error relates to an amendment made by the court to an instruction offered by the defendant. The instruction as given (the amendment made by the court being italicized) is as follows:

"The court instructs the jury that if they believe from the evidence that when William E. Bloxom went to Europe with the American army, he turned his farm over to his father to operate for the latter's benefit, and not as his (William E. Bloxom's) agent, and that he (the father) was so operating it during the year 1919, *and that there was no accounting by Malcolm Bloxom to William E. Bloxom for or on account of any profits realized during said year, if any profits were actually realized therefrom,* you will find a verdict for the defendant.

In view of the evidence tending to show that Malcolm Bloxom accounted to the defendant for the profits derived from the farm during the year 1919, and that the defendant thereby received the benefits resulting from the contract, we think the amendment made by the court was proper, and consonant with the facts and the issues to be decided by the jury.

Upon consideration of the whole record, we find no prejudicial error against the defendant, and are of the opinion that the verdict of the jury is in accordance with the merits and justice of the case. The judgment of the lower court will, therefore, be affirmed.

*Judgment affirmed.*