ROBERT SCHICKLING, ET AL.

V.

KENNETH J. ASPINALL

Record No. 850466

June 10, 1988

Present: All the Justices

*Edwin Gadberry, III (Gadberry & Hogan,* on briefs), for appellants.

*Robert S. Ganey* for appellee.

POFF, J., delivered the opinion of the Court.

This is an appeal from a judgment denying both the claim and the counterclaim in a breach-of-contract action. By assignment of error, the appellant-defendants question the trial court's construction of the contract, and the appellee-plaintiff assigns cross-error to the trial court's ruling against his damage claim.

In November 1981, Robert Schickling and his wife, Dorothy, entered into a "CO-OWNERSHIP AGREEMENT" with Kenneth J. Aspinall to acquire a house and lot from a third party. The document identified the Schicklings as "Resident" and Aspinall as "Non Resident". The Schicklings were authorized to occupy the house as their residence, conditioned upon payment of 38 percent of the monthly mortgage installments. Aspinall was required to pay 62 percent. Paragraph 1 of the agreement provided that title to the property would be held by the parties as tenants in common and that "[t]he percentages of ownership . . . as to the sharing of profits and losses from the ultimate sale of the Property . . . shall be as specified in the schedule attached hereto". The schedule fixed the percentages of ownership as "95% for Non Resident and 05% for Resident."

In 1983, Mr. Schickling's employer required him to transfer to another area, and it became necessary to sell the residence. The "settlement statement" prepared for the closing showed cash due from the sellers (what the parties to this appeal call a "shortfall")

of $3,429.50. Aspinall did not attend the closing, and in order to expedite the transaction, the Schicklings advanced that sum. Later, Aspinall learned that Mr. Schickling's employer had paid him $7,179.50 to defray the costs occasioned by the job transfer. Claiming 95 percent of that amount, Aspinall sued the Schicklings for breach of contract. In their counterclaim, the defendants demanded 95 percent of the shortfall from the sale.

The trial court, sitting without a jury, dismissed the Schickling's counterclaim. The court based its ruling on its interpretation of paragraph 15 of the contract. That paragraph defines certain payments made by one of the parties during their ownership of the property as "loans" repayable out of the proceeds of any future sale. The trial judge characterized the language of paragraph 15 as "somewhat ambiguous" but concluded that the shortfall paid by the Schicklings was not a loan within the definition of that paragraph.

■ We agree, but we believe that paragraph 15 is immaterial. As we interpret the settlement statement, the $3,429.50 due from the sellers was the net loss sustained by the tenants in common. Under paragraph 1 of the contract, the co-owners agreed that "the sharing of profits and losses from the ultimate sale of the Property" would be determined by "[t]he percentages of ownership". Accordingly, we hold that the trial court erred in dismissing the Schicklings' counterclaim.

■ We turn now to Aspinall's claim for 95 percent of the money paid Mr. Schickling by his employer. Invoking "a doctrine sometimes called the collateral source rule", the trial judge dismissed Aspinall's claim. Under that rule, compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes. Originally, the rule applied exclusively to claims *ex delicto*. In the early cases, the collateral compensation involved was money paid the plaintiff by his own insurer. Later cases have applied the rule to social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous. *See generally* 22 Am. Jur. 2d *Damages* §§ 566-87 (1988).

■ The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is

entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.*

For more than a century, this Court has approved and applied the collateral source rule in tort cases. *See Balt. & Ohio R. R. Co. v. Wightman's adm'r.*, 70 Va. (29 Gratt.) 431, 445-46 (1877), *rev'd on other grounds sub nom. Railroad Co. v. Koontz*, 104 U.S. 5 (1881); *Johnson v. Kellam*, 162 Va. 757, 764-65, 175 S.E. 634, 636-37 (1934); *Burks v. Webb, Administratrix*, 199 Va. 296, 304, 99 S.E.2d 629, 636 (1957); *Walthew v. Davis, Adm'r*, 201 Va. 557, 562-63, 111 S.E.2d 784, 787-88 (1960); *see also* Code § 8.01-35. Courts in several jurisdictions have extended the doctrine to actions *ex contractu. See, e.g., Labor Board v. Gullett Gin Co.*, 340 U.S. 361, 364-65 (1951) (unemployment compensation benefits not deducted from back pay award); *Hall v. Miller*, 143 Vt. 135, 141-44, 465 A.2d 222, 225-27 (1983) (state and federal indemnity payments not deducted from damages for breach of implied warranty of merchantability).

We never have had occasion to consider whether the collateral source rule applies to contract cases. And in this case, the rule is inapposite. By definition, it applies to collateral compensation received by a plaintiff. Here, the collateral compensation in issue was received by one of the defendants named by the plaintiff Aspinall. Apparently, Mr. Schickling was entitled to that compensation under his contract of employment. Aspinall was not a party to that contract, the employer and employee never intended that Aspinall be a third-party beneficiary of that contract, and that contract was wholly unrelated to the co-ownership agreement upon which Aspinall based his suit for breach.

Finding that Aspinall had no cause of action against the Schicklings for breach of contract, we will affirm the trial court's ruling dismissing his claim. We will reverse the ruling dismissing the counterclaim and enter final judgment in favor of the

---

* Arguably, the balance is upset and the logic underlying the rule is defeated when the wrongdoer is insulated by insurance from liability for his wrong and the plaintiff's insurer is entitled, by way of subrogation, to the plaintiff's right of recovery against the tortfeasor. In such case, neither the tortfeasor nor the victim enjoys a windfall.

Schicklings for $3,258.03, representing 95 percent of the shortfall suffered by the co-owners.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*