Present:  All the Justices

ACORDIA OF VIRGINIA INSURANCE
AGENCY, INC.

v.  Record No. 011098  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          March 1, 2002
GENITO GLENN, L.P.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge


This appeal arises from the alleged failure of the appellant, Acordia of Virginia Insurance Agency, Inc. (Acordia), to include the appellee, Genito Glenn, L.P. (Genito), as a named insured on a builders risk insurance policy.  Because we conclude that another entity acted as Genito's agent in procuring that insurance policy through Acordia, thereby establishing privity between Genito and Acordia, we will affirm the circuit court's judgment allowing Genito to recover damages for economic losses resulting from Acordia's negligent performance of its contractual obligations.  However, we will reverse the court's judgment finding that funds received by Genito in settlement of another case were a collateral source of recovery and refusing to consider whether the verdict rendered against Acordia in this case should be reduced by the amount of consideration paid for that settlement.

FACTS AND MATERIAL PROCEEDINGS

Genito, a limited partnership, was the owner of a proposed apartment complex project (the Genito project) to be located in Chesterfield County. National Housing Corporation (NHC) was responsible for procuring builders risk insurance coverage for several apartment complex projects, including the Genito project.[1] NHC, in turn, contracted with Acordia, an insurance broker, to obtain a builders risk insurance policy to cover Genito, among other limited partnerships.

In construction of the Genito project, a substance known as fly ash was used as ground fill. The fly ash was defective for this intended purpose, resulting in cracks in the buildings' foundations. Consequently, the structural integrity of the buildings was compromised, requiring that they be demolished and rebuilt.

As a result of the damage to the buildings, Genito filed an action in the Circuit Court of the City of Virginia Beach, styled Genito Glenn, L.P. v. National Hous. Bldg. Corp., Law No. CL98-2847 (the NHBC case), naming as defendants the project's various contractors,

---

[1] The record lacks a specific description of NHC's business, but NHC had responsibilities for negotiating and reviewing limited partnership agreements, negotiating construction and permanent loans for projects such as the Genito project, as well as procuring insurance for those projects.

subcontractors, engineers, and material suppliers.  In an amended motion for judgment, Genito alleged theories primarily based on tort, breach of contract, breach of express and implied warranties, and fraud.  The circuit court sustained demurrers to all but one of the negligence counts in the NHBC case.  The case then settled, and the terms of that settlement were filed under seal in the present action.

Genito also filed a claim reporting its loss under the builders risk insurance policy purportedly procured by NHC through Acordia.  Because coverage was denied, Genito filed a declaratory judgment action in federal court to determine whether Genito was a named insured under the policy.  In an unpublished decision, that court held that Genito's loss would have been covered by the policy had Genito been a named insured, but that it was not.  Genito Glenn, L.P. v. Security Ins. Co. of Hartford, No. 2:98cv1314 (E.D. Va. Oct. 27, 1999).

In November 1999, Genito filed the action at issue in this appeal, alleging that Acordia had negligently failed to name Genito as an insured on the builders risk insurance policy.  Genito sought damages for its losses under theories of negligence and breach of contract.

Genito then filed a motion in limine to exclude evidence of the amount it received in settlement of the NHBC case. Genito argued that the collateral source rule barred Acordia from introducing either the fact of the settlement or the amount received by Genito into evidence to reduce Acordia's potential liability to Genito. The trial court sustained the motion in limine with respect to Genito's negligence claim. In a letter opinion incorporated into its order, the court concluded that the collateral source rule prohibited use of the settlement amount to reduce Acordia's liability for its alleged negligence. However, the court declined to address whether the collateral source rule applied to Genito's breach of contract claim.

Acordia filed a motion for reconsideration, contending that the collateral source rule does not apply to settlements of disputed litigation. It also asserted that the provisions of Code § 8.01-35.1 required the trial court to reduce any verdict entered in favor of Genito by the amount Genito had already received in settlement of the NHBC case. Finally, Acordia argued that if Genito had been afforded coverage under the builders risk insurance policy, it would have been bound by the policy's terms, which included specific provisions for subrogation and offset for

4

any part of a loss paid by others. The trial court denied Acordia's motion for reconsideration on the application of the collateral source rule to Genito's negligence claim, but again deferred ruling on that issue with respect to the contract claim.

At the close of Genito's case-in-chief during the trial, Acordia moved to strike the evidence. As pertinent to this appeal, Acordia argued that Genito had failed to adduce any evidence that Genito and Acordia were in privity. Acordia asserted the necessity of such proof as a predicate for recovery of economic loss damages resulting from negligent performance of a contractual commitment. The court denied Acordia's motion, finding sufficient evidence to establish privity between Genito and Acordia.

After the close of all the evidence, Genito elected to nonsuit its breach of contract claim; thus, the court submitted only the negligence claim to a jury. The jury returned a general verdict in favor of Genito in the amount of $1,825,136.54, plus pre-judgment interest. Citing Code § 8.01-35.1, Acordia then moved for a reduction of the verdict by the amount received by Genito in settlement of the NHBC case. Acordia also moved to set aside the verdict on the basis, previously asserted, that Genito had failed to prove privity between itself and Acordia. At a

5

subsequent hearing, the trial court denied both of Acordia's post-trial motions. The court then entered final judgment in favor of Genito.

Acordia now appeals from that judgment. It assigns the following errors: (1) that the trial court erred in allowing Genito to recover economic losses in a tort action because Genito failed to establish privity between itself and Acordia; (2) that the trial court erred in refusing to give Acordia a credit in this action for the amount received by Genito in settlement of the NHBC case; and (3) that the court erred by finding that the settlement amount received by Genito was from a collateral source and in refusing to permit Acordia to introduce evidence regarding that settlement amount in light of the provisions of the builders risk insurance policy reducing any benefits payable under the policy by sums paid by others. We turn now to these issues.[2]

## ANALYSIS

### I. PRIVITY

At trial, Genito elected to nonsuit its breach of contract claim, and the case proceeded to the jury only on Genito's negligence claim against Acordia. Genito does not

---

[2] We will present additional facts as pertinent to the specific issues.

dispute that, in the tort claim, it sought only economic loss damages for Acordia's alleged negligent performance of its contractual obligation. In order to recover such losses, Genito was required to establish privity of contract between itself and Acordia. See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 422-23, 374 S.E.2d 55, 56-57 (1988); Blake Const. Co. v. Alley, 233 Va. 31, 33-36, 353 S.E.2d 724, 725-27 (1987). "[I]n the absence of privity, a person cannot be held liable for economic loss damages caused by [the] negligent performance of a contract." Gerald M. Moore & Son, Inc. v. Drewry, 251 Va. 277, 280, 467 S.E.2d 811, 813 (1996).

Genito asserts that when NHC contracted with Acordia to procure a builders risk insurance policy to cover Genito, as well as other limited partnerships, NHC was acting as Genito's agent, thus creating privity between Genito and Acordia. Acordia disputes this assertion and argues that Genito failed to carry its burden of proof as the party alleging an agency relationship. See State Farm Mut. Auto. Ins. Co. v. Weisman, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994) (party alleging agency relationship bears burden of proving it). Continuing, Acordia argues that evidence of an element necessary to establish a principal-agent relationship, specifically, the right to

control, is absent in this case, and that Genito simply assumed that the mere procurement of an insurance policy by NCH for Genito's benefit created an agency relationship. We disagree with Acordia.

We have defined the term "agency" as "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." Reistroffer v. Person, 247 Va. 45, 48, 439 S.E.2d 376, 378 (1994); accord Weisman, 247 Va. at 203, 441 S.E.2d at 19; Allen v. Lindstrom, 237 Va. 489, 496, 379 S.E.2d 450, 454, cert. denied, 493 U.S. 849 (1989).

While the power of control is an important factor to consider in determining whether an agency relationship exists, see Reistroffer, 247 Va. at 48, 439 S.E.2d at 378; Allen, 237 Va. at 496, 379 S.E.2d at 454 (citing Texas Co. v. Zeigler, 177 Va. 557, 564, 14 S.E.2d 704, 706 (1941)), "[a]gency may be inferred from the conduct of the parties and from the surrounding facts and circumstances." Drake v. Livesay, 231 Va. 117, 121, 341 S.E.2d 186, 189 (1986) (citing Royal Indem. Co. v. Hook, 155 Va. 956, 970, 157 S.E. 414, 419 (1931)).

"[W]hether an agency relationship exists is a question to be resolved by the fact finder unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents." Weisman, 247 Va. at 203, 441 S.E.2d at 19. Accord Reistroffer, 247 Va. at 48, 439 S.E.2d at 378; Drake, 231 Va. at 121, 341 S.E.2d at 189. We will not reverse the trial court's judgment refusing to set aside the jury verdict "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. On appeal, Genito, as the party armed with a jury verdict that has been approved by the trial court, "occupies the most favored position known to the law." Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980) (citing Tri-State Coach Corp. v. Walsh, 188 Va. 299, 303-04, 49 S.E.2d 363, 365 (1948)). Consequently, the evidence and all reasonable inferences fairly deducible therefrom with regard to the issue of agency must be viewed in the light most favorable to Genito. Evaluation Research Corp. v. Alequin, 247 Va. 143, 147, 439 S.E.2d 387, 390 (1994).

Applying these principles, we conclude that the facts and circumstances in this case, as well as the parties' conduct, demonstrate that an agency relationship existed between Genito and NHC. Russell W. Johnson, who previously

9

worked as a financial manager at NHC, stated that he contacted Acordia for the purpose of obtaining insurance coverage for several limited partnerships and their respective apartment complex building projects, including the Genito project. Continuing, Johnson testified that he told J. Scott Eckmann, a property casualty insurance broker who was formerly a senior vice president at Acordia, about the various limited partnerships, explained that these partnerships would own the projects, and stressed the necessity that every partnership be protected under the insurance policy. Johnson also stated that he discussed with Eckmann the calculation of premiums to be charged to each project, and in doing so, provided a list of completed values for the projects, including that of the Genito project. Another former employee of NHC testified that, when projects were "coming on to be constructed," she contacted Acordia for the purpose of having certificates of insurance issued and sent to NHC.

Eckmann acknowledged that he knew that NHC was acting on behalf of all of the limited partnerships to procure insurance coverage and that Johnson had a portfolio of properties for which insurance was needed, both at the builders risk stage and at the completed value stage. Eckmann also stated that he delivered the builders risk

insurance policy purportedly issued to cover Genito and its apartment complex project to Johnson at NHC. NHC's responsibility for procuring insurance, the manner in which it set about to do so, and the information disclosed by Johnson to Eckmann were consistent with the existence of an agency relationship between NHC and Genito. An agent commonly represents the principal in the creation and performance of contracts with third parties. Virginia Iron, Coal & Coke Co. v. Odle's Adm'r, 128 Va. 280, 287, 105 S.E. 107, 109 (1920); see also Dimos v. Stowe, 193 Va. 831, 839, 71 S.E.2d 186, 190-91 (1952).

Despite Acordia's argument that there is no direct evidence regarding Genito's right to control NHC, "[d]irect evidence is not indispensable – indeed frequently is not available – but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." Bloxom v. Rose, 151 Va. 590, 598-99, 144 S.E. 642, 644 (1928). "[W]hat evidence shall be sufficient to establish agency in any given case . . . must be determined in view of the facts in each particular case." Id. at 595, 144 S.E. at 643 (quotation marks and citation omitted). In Bloxom, a father took over the management of his son's farm when the son went overseas for military service. In light

11

of the father's activities in operating the farm, including his statement that he was acting on behalf of his son, we found an agency relationship between the father and son even though each of them testified that the son had turned over the farm to his father for the father's own benefit until the son returned and resumed control.  Id. at 593-99, 144 S.E. at 643-44.  Likewise, we conclude that the evidence in this case is sufficient to establish that NHC was acting as Genito's agent in procuring insurance.

"[W]hen an agent, acting within the scope of [the] apparent agency, enters into a contract with a third person[,] 'the principal becomes immediately a contracting party, with both rights and liabilities to the third person.'  Equitable Variable Life Ins. Co. v. Wood, 234 Va. 535, 539, 362 S.E.2d 741, 744 (1987) (emphasis added) (quoting Restatement (Second) of Agency § 8 cmt. d (1957)).  Thus, as Genito asserts, when NHC, acting as Genito's agent, contracted with Acordia for insurance to cover Genito, Genito then became a contracting party with Acordia, thereby establishing privity between those two entities.[3]  See Harris v. McKay, 138 Va. 448, 457, 122 S.E.

---

[3] Because privity existed between Genito and Acordia, we do not need to decide whether Genito was a third party beneficiary of the contract between NHC and Acordia, and if so, whether Genito could recover damages for economic

137, 140 (1924). Accordingly, the trial court did not err in upholding the jury verdict awarding economic loss damages to Genito for Acordia's negligent performance of its contractual obligations.

## II. COLLATERAL SOURCE RULE AND CREDIT FOR SETTLEMENT OF NHBC CASE

Acordia claims that it was entitled to a reduction of the verdict entered against it because the amount received by Genito in settlement of the NHBC case was not from a collateral source. Acordia contends that the collateral source rule was, therefore, not implicated in this case and should not have been used by the trial court to prevent Acordia from introducing evidence regarding the fact and amount of that settlement in order to reduce its potential liability to Genito. We agree that the funds received by Genito when it settled the NHBC case are not a collateral source recovery.

We have applied the collateral source rule in tort cases for more than a century. Acuar v. Letourneau, 260 Va. 180, 188, 531 S.E.2d 316, 320 (2000). Under that rule, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes."

_____

losses in a tort claim on that theory, argued in the

13

<u>Schickling v. Aspinall</u>, 235 Va. 472, 474, 369 S.E.2d 172, 174 (1988); <u>accord</u> <u>Acuar</u>, 260 Va. at 188-89, 531 S.E.2d at 320.  However, only certain types of payments have been deemed to constitute collateral source recovery:

> Originally, the [collateral source] rule applied exclusively to claims <u>ex</u> <u>delicto</u>.  In the early cases, the collateral compensation involved was money paid the plaintiff by his own insurer.  Later cases have applied the rule to social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous.

<u>Schickling</u>, 235 Va. at 474, 369 S.E.2d at 174.  Comment b to the Restatement (Second) of Torts § 920A (1979) explains benefits from collateral sources in this way:

> If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.  If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.

However, this rationale is inapposite in a settlement of litigation from one of multiple tortfeasors.

> [T]he collateral source rule and the joint tort-feasor rule are capable of compatible coexistence only if their differing fields of operation are recognized and respected.  The collateral source rule purports to place upon the defendant-tort-feasor the full burden of his wrongdoing.  If, however, the plaintiff's injury is the product of the combined wrongdoings of the defendant and a settling joint tort-feasor, the credit rule

---

alternative by Genito.

14

> intercedes to ensure that the defendant will not
> be burdened with full restitution for an injury
> which . . . by settlement of a tort claim, the
> plaintiff implicitly attributes in part to the
> settling party.

Sweep v. Lear Jet Corp., 412 F.2d 457, 461 (5th Cir. 1969).
Hence, the collateral source rule traditionally does not
apply to settlement proceeds.  See, e.g., Villarini-Garcia
v. Hospital Del Maestro, 112 F.3d 5, 9 (1st Cir. 1997);
FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1083 (10th Cir.
1994); Kassman v. American Univ., 546 F.2d 1029, 1034-35
(D.C. Cir. 1976); Riexinger v. Ashton Co., 453 P.2d 235,
237 (Ariz. Ct. App. 1969).  See also Restatement (Second)
of Torts § 920A (distinguishing between payments made by
one who believes he is subject to tort liability and
payments or benefits from collateral sources).  Thus, we
conclude that the circuit court erred in holding that the
amount received by Genito in settlement of the NHBC case
was a collateral source recovery.

Relying on Code § 8.01-35.1(A), Acordia next argues
that the verdict obtained by Genito in this case must be
reduced by the amount received by Genito in settlement of
the NHBC case.[4]  On brief, Acordia acknowledged that a

---

[4] Code § 8.01-35.1 provides, in relevant part:

A. When a release or a covenant not to sue is
given in good faith to one of two or more persons

15

factor to be considered in determining the applicability of this statutory provision is whether the release or covenant not to sue given in the NHBC case was for the "same injury, or the same property damage" as that represented by the jury award in this case.  Code § 8.01-35.1(A).  We agree that such inquiry is required by the terms of Code § 8.01-35.1(A).

Acordia also acknowledged on brief that, in this case, Genito claimed not only the same damages that were claimed in the NHBC case (damages arising from the tearing down and reconstructing of the apartment complex buildings), but also its losses due to interest charges, attorneys' fees, lost tax credits, additional license fees, and a premium for insurance that it never received.  Indeed, the jury was instructed that Genito could recover these items as elements of damage if the jury believed that such damages

_____

liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tort-feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater. . . .  A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be

16

were proximately caused by Acordia's alleged negligence. Genito was thus able to present to the jury and have it consider evidence regarding some elements of damages not claimed in the NHBC case. However, to the extent that Genito has been compensated for losses it claimed in both this case and the NHBC case, Acordia asserts that it is entitled to a credit for that sum.

It may be difficult to ascertain which elements of Genito's claimed damages were included by the jury in its verdict or the amount awarded for any particular element of damage. Nevertheless, if Acordia is correct in its assertion that the release in the NHBC settlement was given "to one of two or more persons liable in tort for the same injury, or the same property damage[,]" Code § 8.01-35.1(A), then Acordia is entitled to have the opportunity to show that it was due a credit for any sums included in the NHBC settlement that are duplicative of the damages awarded by the jury in this case. Code § 8.01-35.1(A)(1) specifies that "any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the

_____

considered by the court in determining the amount for which judgment shall be entered[.]

17

amount of the consideration paid for it, whichever is the greater."

However, Code § 8.01-35.1(A)(1) also provides that such a release "shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered[.]"  Thus, Acordia would not have been entitled to have the jury consider evidence regarding the settlement of the NHBC case.  Instead, the fact and amount of the settlement were a matter for the trial court to consider when determining the amount of judgment to be entered against Acordia.  See Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 115, 413 S.E.2d 611, 622-23 (1992).  Accordingly, we conclude that the circuit court erred in failing to consider the application of Code § 8.01-35.1 and will remand for further proceedings consistent with this opinion.

In determining the amount of consideration paid by a tortfeasor for a release, the trial court "must look at the injury or damage covered by the release and, if more than a single injury, allocate, if possible, the appropriate amount of compensation for each injury."  Id., 413 S.E.2d at 622.  The court must also ascertain whether any of the consideration paid for the release and settlement of the

18

NHBC case covered injuries suffered by other parties.  Id., 413 S.E.2d at 623.  In short, the court must decide whether the release in the NHBC case was "given . . . to one of two or more persons liable in tort for the same injury, or the same property damage," thereby duplicating any element of damage awarded to Genito in this case.[5]  Code § 8.01-35.1(A).

Finally, Acordia argues that, pursuant to the terms of the builders risk insurance policy under which Genito sought coverage, any recovery by Genito from other sources, e.g., the amount received in settlement of the NHBC case, would have reduced the amount payable under the policy. Acordia claims that it is entitled to the benefit of that policy provision in determining the amount of its liability and that the trial court, therefore, erred in not allowing it to present evidence to the jury regarding the settlement of the NHBC case.  We do not agree.

In this tort claim, Acordia cannot rely on the terms of an insurance policy that, because of Acordia's negligence, did not include Genito as a named insured. Furthermore, Acordia has not assigned error to a jury

---

[5] In making the determinations required by Code § 8.01-35.1, the trial court must also consider Genito's argument that none of the parties contributing to the settlement of the NHBC case were liable in tort to Genito.

19

instruction granted by the trial court that stated, in relevant part, that Genito's damages were not "limited to what Genito may have recovered under the [builders] risk policy had it been a named insured thereunder" because "the suit is based upon the broker's negligence in failing to procure the insurance, not upon the contract of insurance itself."[6]

## CONCLUSION

For these reasons, we will affirm in part and reverse in part the judgment of the circuit court, and remand for further proceedings consistent with this opinion.

Affirmed in part;
reversed in part;
and remanded.

---

[6] Acordia also did not assign error to the trial court's refusal to grant two instructions that would have told the jury that, to the extent that Genito received sums of money from other persons for its losses, such sums would be deducted from any insurance benefits payable to Genito.

20