**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NETWORK SOLUTIONS, INCORPORATED,
                    *Plaintiff-Appellee,*

v.

HOBLAD, B.V.; HYUNGHAE BYUN,
a/k/a H. Byun, a/k/a H. H. van
Bladel Byun, a/k/a Bion,
                    *Defendants-Appellants.*

No. 03-1226

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-02-479-A, CA-02-480-A)

Submitted: October 20, 2003

Decided: December 19, 2003

Before WILKINS, Chief Judge, and TRAXLER
and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

James C. Sargent, Jr., Maureen M. McBride, LAW OFFICES OF
WINDLE & MCERLANE, P.C., West Chester, Pennsylvania, for
Appellants. Brian A. Davis, Philip L. Sbarbaro, NETWORK SOLU-
TIONS, INC., Dulles, Virginia; Timothy B. Hyland, LEFFLER &
HYLAND, P.C., Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellants, Hoblad, B.V. (Hoblad) and Ms. Hyunghae Byun, appeal a district court order granting summary judgment to Network Solutions, Inc. (NSI) in its breach of contract action relating to the registration of Internet domain names. Finding no reversible error, we affirm.

### I.

NSI provides Internet-related services, including the registration of "second-level domain names" (SLDNs). SLDNs are the names immediately to the left of "top-level domain" designations such as ".com" and ".org"—for example, the name "google" in "google.com." Between November 1998 and April 2000, NSI registered approximately 3,400 SLDNs in the name of Hoblad, a Dutch corporation owned by Wil van Bladel. During this same period, NSI registered approximately 1,500 SLDNs in the name of Byun, van Bladel's wife.

The process by which each of these SLDNs was registered was substantially the same. Appellants contracted with one of two domain name registration services ("the intermediaries") to submit a registration application to NSI on Appellants' behalf. In particular, Appellants submitted their requested SLDN and their contact and billing information to one of the intermediaries by entering the information on the intermediary's website. The intermediary then submitted this information to NSI on an electronic form. At that time, the intermediary agreed—on behalf of Appellants—to the terms of NSI's Domain Name Registration Agreement ("the registration agreement"), which required the party for whom the SLDN was registered to pay a nonrefundable registration fee of $70.* Upon receiving Appellants' regis-

---

*Two different versions of the registration agreement were used by NSI during the relevant time period. The differences between these versions do not affect our resolution of this appeal.

tration application and verifying that the requested SLDN was available, NSI registered the SLDN and mailed an invoice to Appellants for the registration fee. Enclosed with each invoice was a copy of the registration agreement.

Appellants failed to pay for the registration of 4,280 SLDNs. NSI sued Appellants for breach of contract and unjust enrichment, and both sides moved for summary judgment. At the outset of its summary judgment analysis, the district court explained that two interrelated issues were presented: (1) whether Appellants were subject to personal jurisdiction (an issue the court had previously reserved pending resolution of the merits) and (2) whether Appellants breached their alleged contracts with NSI. The court recognized that the resolution of both issues turned on whether valid and enforceable contracts existed between Appellants and NSI.

Regarding personal jurisdiction, the district court noted that the registration agreement contained a clause under which the registrant (here, Appellants) consented to jurisdiction in the Eastern District of Virginia, and that such clauses are generally enforceable, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002). Appellants argued, however, that they were not bound by this clause because they never executed the agreements with NSI. Rather, Appellants asserted that they only entered into agreements with the intermediaries, and, if the intermediaries subsequently entered into other agreements on Appellants' behalf, Appellants were not bound by those agreements. Alternatively, Appellants claimed that even if they could be bound by the registration agreements executed by the intermediaries, those agreements only became effective when the contracts were formed. According to Appellants, the contracts did not become enforceable until Appellants paid the registration fees—an event that never happened for most of their SLDN registrations.

The district court determined that Appellants were bound by the registration agreements because the intermediaries had acted as Appellants' agents in executing those agreements. *See Acordia of Va. Ins. Agency v. Genito Glenn, L.P.*, 560 S.E.2d 246, 249-50 (Va. 2002) (reciting standards for existence of agency relationship). Based on this conclusion, the district court explained that Appellants were liable to

NSI for all registration contracts that the intermediaries had entered into on Appellants' behalf.

The district court next determined that the alleged contracts between Appellants and NSI became enforceable when NSI accepted the registration applications and registered the SLDNs. The court based this conclusion on the unambiguous terms of the registration agreement, which made clear that "a contract was formed at the moment [NSI] accepted the registration application from [Appellants] or their agents." J.A. 1142a; *see World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (recognizing that when contract language is unambiguous, courts need not look beyond that language in interpreting contract as a matter of law). Thus, based on its conclusion that the parties had entered into an enforceable contract in which they agreed to be subject to the jurisdiction of the district court, the court concluded that the exercise of personal jurisdiction over Appellants was proper.

Turning to the issue of whether the contracts between Appellants and NSI were breached, the district court reiterated that Appellants were contractually obligated to pay NSI $70 for each SLDN that NSI registered for them. The court also recognized that it was undisputed that, following NSI's registration of Appellants' SLDNs, Appellants failed to pay fees for over 4,000 SLDNs. Finally, the court noted that the parties did not dispute the amount of damages incurred by NSI. Thus, finding that all the elements of NSI's breach of contract claim were satisfied as a matter of law, the court granted summary judgment to NSI, entering judgment against Hoblad for $206,430 and against Byun for $93,170.

II.

Having reviewed the parties' briefs and the applicable law, we conclude that the district court correctly granted summary judgment to NSI. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*