Present: Hassell, C.J., Lacy, Koontz, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

GARY DEAN BULLARD

OPINION BY
v.  Record No. 031519            SENIOR JUSTICE HARRY L. CARRICO
                                          April 23, 2004
DINA M. ALFONSO

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Robert B. Cromwell, Jr., Judge

In this personal injury case, the sole question for decision is whether the trial court erred in excluding evidence of lost income allegedly suffered by the plaintiff.  Finding the exclusion erroneous, we will reverse.

In a motion for judgment filed below, the plaintiff, Gary Dean Bullard, sought to recover from the defendant, Dina M. Alfonso, damages for personal injuries suffered by the plaintiff in an automobile accident allegedly caused by the defendant's negligence.  In the motion, the plaintiff alleged, inter alia, that as a direct and proximate result of the defendant's negligence he "was prevented from attending to his lawful affairs, thereby losing wages, earnings and profits."

At the time of the accident, the plaintiff was a drywall hanger and plasterer employed by Grant Drywall and Plastering, Inc., a Subchapter S corporation of which the plaintiff was sole stockholder and president.  The plaintiff claimed that, as a result of his injuries, he was unable to perform his duties as a drywall hanger and plasterer for approximately six months and

suffered a wage loss of $4,500.00 per month, for a total of $27,000.00.

In a discovery deposition, the plaintiff testified that his employer had continued to pay him his monthly salary of $4,500.00 during the six-month period he was unable to work.* The defendant then filed a motion in limine seeking "to exclude any attempted claim by the plaintiff to assert a lost wage claim since he continued to receive his salary without reduction and without sick leave, vacation or any other collateral source."

After argument on the motion, the trial court, the Honorable Alan E. Rosenblatt presiding, granted the motion in limine. Then, in a trial before a jury, the Honorable Robert B. Cromwell, Jr., presiding, the evidence of lost wages was excluded and the plaintiff was awarded the sum of $15,000.00 as damages for his injuries. The plaintiff moved to set aside the verdict for the court's "refusal to allow the Plaintiff to introduce testimony and other evidence of wage loss as proffered into the record." The court denied the motion and entered final judgment on the verdict. We awarded the plaintiff this appeal.

Code § 8.01-35 is pertinent to resolution of the question before us. It provides as follows:

---

* The plaintiff testified later at trial that the funds used to pay his salary during his disability consisted of "prior years' earnings" that had been left in "the business account." He said he had "already been taxed on that money."

2

In any suit brought for personal injury or death, provable damages for loss of income due to such injury or death shall not be diminished because of reimbursement of income to the plaintiff . . . from any other source, nor shall the fact of any such reimbursement be admitted into evidence.

Also pertinent is the collateral source rule. The Court first recognized this rule more than one-hundred years ago in Baltimore & Ohio R.R. Co. v. Wightman, 70 Va. (29 Gratt.) 431 (1877), where we held that the trial court did not err in refusing to admit evidence offered by the defendant in a tort case to show that the wife and children of a deceased had received the proceeds from life insurance policies in the sum of $5,000.00. We said: "The mere fact that the family of the deceased received money from some other source would not justly influence the measure of compensation to be made by the defendant for injuries attributable to the misconduct of its employees and agents." Id. at 446.

We recently applied the collateral source rule in Acuar v. Letourneau, 260 Va. 180, 188-89, 531 S.E.2d 316, 320 (2000). There, we held that the portions of bills for medical expenses written off by a plaintiff's health care providers could not be deducted from the amount of damages owed by a tortfeasor. Id. at 192, 531 S.E.2d at 322. We said that "the injured party should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources." Id.

3

at 192-93, 531 S.E.2d at 323.  See also Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 387, 560 S.E.2d 246, 251 (2002); Schickling v. Aspinall, 235 Va. 472, 474, 369 S.E.2d 172, 174 (1988); Walthew v. Davis, 201 Va. 557, 563, 111 S.E.2d 784, 788 (1960); Burks v. Webb, 199 Va. 296, 304, 99 S.E.2d 629, 636 (1957); Johnson v. Kellam, 162 Va. 757, 764, 175 S.E. 634, 636 (1934); Owen v. Dixon, 162 Va. 601, 608, 175 S.E. 41, 43 (1934).

The plaintiff contends that Code § 8.01-35 is a codification of the collateral source rule.  The defendant contends that it is not.  The defendant notes that in Schickling we said that, under the collateral source rule, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes," 235 Va. at 474, 369 S.E.2d at 174 (emphasis added), while Code § 8.01-35 provides that such damages "shall not be diminished because of reimbursement of income to the plaintiff."  (Emphasis added.)

The defendant maintains that Code § 8.01-35 "has replaced the common law Collateral Source Rule" so that now the focus is not upon the receipt of compensation for loss of income but upon the reimbursement of income.  Here, the defendant says, the plaintiff lost no income, there was nothing to be reimbursed and, therefore, Code § 8.01-35 is inapplicable.

4

We do not agree that the use of the word "reimbursement" in Code § 8.01-35 has the effect of altering the collateral source rule as it was enunciated in Schickling. A person reimbursed for loss of income certainly receives compensation as a result, so if there is any distinction between receiving compensation and obtaining reimbursement in the context of the collateral source rule, it is a distinction without a difference.

The defendant also argues that the salary payments made to the plaintiff in this case were not from "any other source," as contemplated by Code § 8.01-35. Rather, the defendant says, "the Plaintiff continued to receive his same salary of $4,500 per month from his corporation as an employee of his corporation."

The defendant misreads Code § 8.01-35. As noted supra, the Code section provides that a plaintiff's claim for loss of income shall not be diminished because of reimbursement "from any other source." The defendant would have us read the words "from any other source" as meaning a source not collateral to the defendant but to the plaintiff, thus excluding any compensation received from such a source in determining whether a plaintiff's damages for loss of income are diminished within the meaning of Code § 8.01-35. To adopt this meaning would, in effect, overrule the previous decisions in which we have applied the collateral source rule.

5

Correctly read, the words "from any other source" mean a source collateral to the defendant, i.e., a source other than the defendant.  See Schickling, 235 Va. at 474, 369 S.E.2d at 174 (compensation from source collateral to the tortfeasor not deductible); Kellam, 162 Va. at 764-65, 175 S.E. at 636-37 (compensation from a source wholly independent of the defendant not deductible); Black's Law Dictionary 256 (7th ed. 1999) 256 (defining "collateral-source rule" as meaning that compensation "from a source independent of the tortfeasor . . . should not be deducted from the damages that the tortfeasor must pay)."

The question then becomes whether the compensation paid to the plaintiff by his employer in this case is deductible from the damages the tortfeasor owes.  Our earlier decisions are informative.  In Acordia, supra, we quoted with approval Comment b to the Restatement (Second) of Torts § 920A (1979):

> If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.  If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.

263 Va. at 387, 560 S.E.2d at 251.

Although not cited in Acordia, Comment c(2) to the above section of the Restatement is also helpful:

> c. The rule that collateral benefits are not subtracted from the plaintiff's recovery applies to the following types of benefits:

6

. . . .

> (2) Employment benefits.  These may be gratuitous, as in the case in which the employer, although not legally required to do so, continues to pay the employee's wages during his incapacity.

And, in Schickling, we said:

> In the early cases, the collateral compensation involved was money paid {to} the plaintiff by his own insurer. Later cases have applied the rule to social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous.

235 Va. at 474, 369 S.E.2d at 174.

Finally, in Phillips v. United States, 182 F. Supp. 312 (E.D. Va. 1960), the plaintiff was injured in an automobile accident and his salary was gratuitously paid by his employer during the period of his disability.  Interpreting Virginia law, the District Court held the plaintiff was "nevertheless, entitled to recover for loss of time" from work under the collateral source rule.  Id. at 317.

Here, the plaintiff argues that the salary payments made to him by his employer were, in fact, from a source collateral to the defendant and that under the collateral source rule and Code § 8.01-35, he should have been permitted to submit his wage-loss claim to the jury.  On the other hand, the defendant argues that "this Court has never actually held, as opposed to stated in

7

dicta, that a plaintiff who actually continued to receive a salary can make a claim for lost wages."

It is true that none of our previous cases involved a situation where an employer continued to pay an employee's salary during the period of the employee's disability. However, our earlier references to such a situation were part of the rationale for the decisions then made and, therefore, not dicta. But if there be any doubt about the matter, we now expressly hold that under the collateral source rule and Code § 8.01-35, compensation paid by an employer to an employee during the period of the employee's disability is not deductible from the quantum of damages the tortfeasor owes. And it follows that evidence of the employee's loss of income is admissible in evidence at trial and that, under Code § 8.01-35, the fact of any reimbursement to the employee by the employer shall not be admitted into evidence.

But, argues the defendant, the plaintiff was not entitled to have his claim submitted to the jury because he continued to perform his duties as corporate president and "[t]he corporation . . . generated income from the employees who performed drywall and plastering services as well as from subcontracting work to other entities." Although the defendant takes considerable liberty with the record concerning these matters, we will assume for the purpose of discussion that he has correctly stated what

8

the record shows.  But whether the plaintiff continued to perform his duties as corporate president and the corporation generated income from the employees who performed drywall and plastering services as well as subcontracting work to other entitles is all irrelevant to the question whether the plaintiff's evidence of lost income was properly excluded in the trial below.

The fact remains, and it is undisputed by the defendant, that the plaintiff was disabled from performing his drywall hanging and plastering duties for six months.  Yet his employer continued paying him his monthly salary of $4,500.00 notwithstanding his inability to perform such duties.  We hold that this constitutes reimbursement "from any other source" under Code § 8.01-35 and that reimbursement cannot be used to diminish the plaintiff's "provable damages for loss of income . . . nor shall the fact of any such reimbursement be admitted into evidence."

The plaintiff should have the opportunity to prove his damages for loss of income.  Accordingly, for the trial court's error in excluding the plaintiff's evidence on that point, we will reverse the judgment appealed from and remand the case for a new trial limited to the issue of damages consistent with the views expressed in this opinion.  Any recovery for such loss

shall, of course, be in addition to other damages the jury finds the plaintiff suffered for his personal injuries.

This disposition gives the plaintiff a chance to bring his case within the purview of the collateral source rule, which is

> to strike a balance between two competing principles of tort law:  (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong.  A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall.  Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

Schickling, 235 Va. at 474-75, 369 S.E.2d at 174.

Reversed and remanded.